WILLIAM OSTENBERG, APPELLANT, V. JOHN KAVKA, APPELLEE.

FILED FEBRUARY 13, 1914. No. 17,567.

1. **Bills and Notes: BONA FIDE PURCHASERS: BURDEN OF PROOF.** In an action against the maker upon promissory notes, when it is shown that they were obtained by fraud practiced upon the maker and were without consideration, the plaintiff in order to recover must allege and prove that he took the notes in good faith in the usual course of business and paid value, without notice of any defense thereto.

2. ———: ———: QUESTION FOR JURY. In such case the question of the good faith of the plaintiff is for the jury, and their verdict cannot be controlled and directed by the court, if one might reasonably derive inferences from the character and circumstances of the transaction which would lead ordinary minds to a different conclusion.

APPEAL from the district court for Colfax county: CONRAD HOLLENBECK, JUDGE. *Affirmed.*

*George W. Wertz,* for appellant.

*Cain & Mapes, contra.*

SEDGWICK, J.

This is an action upon four promissory notes for $50 each. The defendant alleges that the notes were obtained by fraud, and that he has received no value therefor. The plaintiff denied that the notes were obtained by fraud, and alleges that he is an innocent purchaser and as such is entitled to recover thereon. Upon trial in the district court for Colfax county, there was a verdict and judgment in favor of the defendant, and the plaintiff has appealed.

It appears that in July, 1908, the defendant was in business in Surprise, Nebraska, and entered into a contract with the Overland Manufacturing Company for the purchase of a bill of jewelry. The contract provided that the defendant might at any time after four months and within a year return any or all of the articles so purchased and receive credit therefor on certain conditions. The defendant sold a small amount of the jewelry, and afterwards returned the remainder under the contract and paid the company for the jewelry that he had sold. The contract price for the jewelry was $220, and the last three lines of the contract were, in substance, a promissory note, and, while they were a part of the contract and were evidently so signed, these lines were so arranged and the paper was so perforated that they could be easily detached and would then appear as a promissory note. After the defendant had returned the goods and the transaction was apparently closed, one R. B. Zachery appeared with this detached note and presented it to the defendant for payment.

The original contract signed by the defendant was manifestly fraudulent, and this appears to be conceded. The uncontradicted evidence was that, when Zachery presented this paper to the defendant for payment, the defendant refused payment, and Zachery represented to him that the paper which he held was the property of a responsible Omaha bank; that the bank was an innocent purchaser;

that he was acting for the bank and would proceed to enforce payment; and that upon these representations the defendant executed the notes sued upon.

It is suggested that this evidence is not sufficient to show that the notes in suit were obtained by fraud because there is no evidence that the paper which Zachery presented was not the property of a responsible bank, nor that the bank which owned it was not an innocent purchaser, nor that Zachery did not represent the bank in good faith. If the defendant was liable upon .the paper as presented by Mr. Zachery because the owner of the paper was the holder thereof in good faith, having so purchased it for full value in the usual course of business, it would furnish sufficient consideration for the notes in suit; but that was an issue that it devolves upon the plaintiff to establish to enable him to recover upon the strength of the title and possession of the bank, and there is no evidence in the record of the truth of Zachery's representations, or that the paper which he presented was the property of any bank, much less that the bank was the owner and holder of the paper as a purchaser in good faith. It follows that these notes were fraudulently obtained, and that the plaintiff cannot recover thereon unless he was a purchaser of the notes in good faith, for value, in the usual course of business, and without notice. Our negotiable instrument act (Rev. St. 1913, secs. 5369-5377) has not changed this rule. *Piper v. Neylon,* 88 Neb. 253.

The plaintiff does not allege in his petition that he purchased the notes in good faith, in the usual course of business, for a valuable consideration, and without notice of any defense thereto; nor does he plead in the language of the statute "that he became the holder of it before it was overdue;  *  *  *  that he took it in good faith and for value;  *  *  *  that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." Rev. St. 1913, sec. 5370. He alleges that Zachery sold the notes in good faith, for a valuable consideration, and transferred them to the plaintiff, and that the plaintiff is now the

owner and holder thereof.   The only evidence as to the purchase of these notes by the plaintiff is in his own deposition, which was taken in Omaha and was in evidence upon the trial.   He was not cross-examined.   He testified that he did not know the defendant, had never met him; that he had known Mr. Zachery eight or ten years in Omaha and South Omaha, and had dealings with him "in a banking way through sales of live stock quite a bit;" that he had never had any business personally with Mr. Zachery until he purchased the notes in suit; that he had never been advised or informed that Zachery "was not honest or square;" that he (the plaintiff) was in the habit of discounting paper and had handled a considerable in Omaha; that he questioned Zachery about the notes, and asked him what they were given for, and that Zachery told him they were "for value received on the notes," and "were for merchandise purchased by this Kavka."   He asked Zachery no further questions, but. examined as to the standing of the defendant in Dun's Mercantile Agency, and found that he stood well in a business way.   He was induced to buy the notes because he could "discount them to a fair advantage and knew they were perfectly good in the mercantile world."   He paid $190 for the four notes in cash to Mr. Zachery.   He indorsed them all in blank, "I guess at that time."   He testified that he did not know anything about any fraud or misrepresentation, and did not know that the Overland Manufacturing Company "were the ones who sold the goods to the defendant," nor that Zachery was connected with that company. He then answered "No, sir" to a series of questions in regard to his knowledge of the terms of the original contract for the purchase of the jewelry, and testified that he did not know anything about the circumstances under which the notes in suit were executed, nor that the defendant had any defense to the payment of these notes.   It does not appear from the evidence what his supposed interest in the several banks was, nor where he was when he bought the notes in suit, nor whether it was in business hours. He does not state what he found in the commercial reports

as to the standing of the defendant. The notes were indorsed by Zachery "without recourse." This fact is not mentioned in the testimony. Neither Zachery nor the plaintiff appeared before the jury. Should the court upon this evidence direct the jury to find a verdict in favor of the plaintiff? If the witness had testified directly that he bought this paper in good faith, in the usual course of business, without any notice of any defense, the jury were at liberty still to disbelieve him if the character and the circumstances of the transaction were such that one might reasonably draw inferences therefrom discrediting the testimony of the witness. The jury cannot be controlled and directed as to the verdict, if one might reasonably derive inferences from the character and circumstances of the transaction which would lead ordinary minds to a different conclusion.

We do not find that in this case we must overrule the judgment of the trial court and direct and control the jury as to the verdict. It follows that the judgment of the district court is

AFFIRMED.

LETTON, FAWCETT and HAMER, JJ., not sitting.