Douglass v. Burton.

ISAAC F. DOUGLASS, APPELLANT, V. CHARLES BURTON ET AL., APPELLEES.

FILED JANUARY 2, 1915.  No. 17,947.

1. **Bills and Notes: DEFENSES.** When a negotiable note is purchased after maturity from an innocent holder who purchased it before maturity for value, the purchaser takes it free from all equities and defenses that existed between the original parties to the paper.

2. ———: ———: DIRECTING VERDICT. In a suit on such a note, it is proper for the trial court to direct a verdict in favor of the plaintiff, where the uncontradicted evidence of witnesses whose credibility is not questioned shows that plaintiff purchased it for value from an innocent holder, who obtained it by purchase for full value before its maturity.

APPEAL from the district court for Hitchcock county: HARRY S. DUNGAN, JUDGE. *Reversed.*

*Lambe & Butler* and *J. W. Cole,* for appellant.

*W. S. Morlan* and *C. H. Boyle, contra.*

BARNES, J.

This was an action in the district court for Hitchcock county on a negotiable promissory note, executed and delivered to Robert Burgess & Son by the defendants, on February 7, 1905, due 18 months after date, for $875, bearing interest at the rate of 8 per cent. per annum.

The amended petition was in the usual form, and alleged, among other things, that before the maturity of the note Robert Burgess & Son sold it to Frank N. Ireland & Son (bankers), in due course of business, for the amount due thereon with interest, at a discount of 2 per cent., and that payees indorsed the note as follows: "For value received, I hereby guarantee payment of the within note and waive demand and notice of protest on same when due. Robert Burgess & Son." That afterwards, on April 20, 1911, at Washburn, Woodford county, Illinois, for and

in consideration of $700 paid by plaintiff to said Ireland & Son, said Ireland & Son sold and assigned the note to the plaintiff and indorsed it as follows: "Pay to I. F. Douglass or order. Frank N. Ireland & Son." That plaintiff is the owner and holder of the note, that the same is long past due and wholly unpaid, and there is now due from defendants jointly and severally to plaintiff the sum of $875, with interest at the rate of 8 per cent. per annum, for which the plaintiff prayed judgment.

The defendants, by their answer, admitted that they signed the note as set forth in plaintiff's petition. Denied all of the allegations of the petition not specifically admitted, and alleged a complete defense as against the original payee.

Plaintiff, by his reply, denied the matters of affirmative defense set forth in the answer, and alleged that Frank N. Ireland & Son purchased said note of Robert Burgess & Son a long time before maturity, for full face value, less 2 per cent., and that, at the time of the purchase and sale of said note and delivery of the same and the payment therefor, said Frank N. Ireland & Son had no notice or knowledge of any defense thereto, and that Ireland & Son afterwards sold, assigned and delivered the note to the plaintiff.

The cause was tried to a jury, and a verdict was returned for the defendants. Judgment was rendered on the verdict, and the plaintiff has appealed.

Appellant contends that the verdict is not supported by and is contrary to the evidence. The note was introduced in evidence, and bore the alleged indorsements. Plaintiff introduced the deposition of Frank N. Ireland, who testified, in substance, that on March 7, 1906, at his office in Washburn, Illinois, he bought the note in suit for its face value, and interest, less 2 per cent.; that the money was paid to Robert Burgess & Son, the business being transacted with Charles H. Burgess; that he paid the consideration for the note by a check on the Washburn bank on March 31, 1906, and the note was then delivered to him; that the check was afterwards paid by the bank to

Robert Burgess & Son; that the indorsement was placed on the back of the note and signed by the bookkeeper of Robert Burgess & Son in his presence. Ireland further testified that he kept the note until April 20, 1911, when he sold it to the plaintiff, who paid him at that time the principal and interest to that date, and the indorsement, "Pay to I. F. Douglass or order. Frank N. Ireland & Son," was put on the back of the note by him at the time of the sale to Mr. Douglass; that the note was delivered to plaintiff at that time, since which time the witness Ireland had not had possession of it or any control over it, and that he claimed no interest in it whatsoever. He further testified that when he bought the note from Robert Burgess & Son he had no knowledge of any defense, or that it was claimed that there was a failure of consideration, and that he did not know what the note had been given for. His testimony was corroborated by the evidence of Charles H. Burgess, a member of the firm of Robert Burgess & Son, who also testified that Mr. Ireland was not told what the note was given for, and that Robert Burgess & Son, since the transaction of March 31, 1906, had no interest in said note. The plaintiff testified that he purchased the note in suit of Frank N. Ireland & Son on April 20, 1911, paying therefor the principal and interest due to that time; that the indorsement of Frank N. Ireland & Son was placed thereon at that time in his presence. On cross-examination plaintiff testified, in substance, as follows: The reason I bought the note, I was dickering with Mr. Ireland for several other papers at the same time, and I wanted this piece, and he told me if I bought it at his price he would sell me some other paper at the same time at my price. I had been in Nebraska previous to that time to look at some real estate, and had ascertained the financial responsibility of the parties who signed the note. In the fall of 1910 I investigated the value of some land on which Mr. Ireland was offering to sell me some mortgages, and Mr. Ireland told me to make inquiry as to the ability of the maker of the note to pay it. I inquired generally about McCook, Culbertson and Imperial. The information I

Douglass v. Burton.

obtained at each place was substantially the same; the makers of the note were good for their contract, and well able to pay the amount due thereon, and their father had considerable property independent of what they had. I never heard of any defense to the note until after I brought this action. None of this testimony was disputed, and there was no evidence introduced impeaching or tending to impeach the testimony of plaintiff or any of his witnesses.

The testimony given by Charles Burton was permitted to go to the jury over plaintiff's objections, and tended to show a defense in the hands of the original payee, and that in June, 1907, Mr. Ireland came out to see the defendant about the note, and the witness told him: "I would not pay the note, and he wanted to know why, and I said I did not have value received, and he wanted to know why it was, and I said the horse had never got a colt, and I showed him my books, and he said, 'If that is the case and I had knowed it, I never would have come here to collect this note or tried to collect it.' * * * He said, * * * 'I will take this note back and turn it back to Burgess & Son,'" The witness further testified that he got notice from Mr. Ireland about the time the note was due which he did not answer; that Mr. Ireland came to see him after the note was due.

At the conclusion of the evidence, the plaintiff moved to strike out defendants' testimony as incompetent, immaterial and irrelevant, and because the testimony did not tend to prove or disprove any of the issues in the case. Plaintiff also moved the court to direct a verdict in his favor. The motions were overruled, to which the plaintiff excepted.

It clearly appears from the evidence that, when the note in suit was sold by Robert Burgess & Son to Ireland & Son, they purchased it for full consideration before maturity in good faith, and in the usual course of business, without notice of any defense thereto, and without any information as to the original consideration for which it was given; that it was sold to the plaintiff after its ma-

turity for its face value. The plaintiff therefore took the note free from all equities and defenses existing between the original parties to the paper. *Koehler v. Dodge,* 31 Neb. 328; *Barker v. Lichtenberger,* 41 Neb. 751; *Jones v. Wiesen,* 50 Neb. 243; *Knight v. Finney,* 59 Neb. 274; *Commissioners of Marion County v. Clark,* 94 U. S. 278.

We find nothing in the negotiable instruments law which in any manner conflicts with the rule stated in the cases above cited. Defendants contended, however, that, while the testimony of plaintiff's witnesses was undisputed and unimpeached, the jury were justified in returning a verdict on inferences to be derived from the evidence; that the jury were not required to accept the evidence introduced by plaintiff as true, though it was not directly contradicted. In support of this contention, defendants seem to rely upon *Ostenberg v. Kawka,* 95 Neb. 314. In that case the plaintiff did not allege that he purchased the note sued on in good faith, and the facts brought out by the testimony are different from those shown in the case at bar. In *Piper v. Neylon,* 93 Neb. 51, it was said: "In a suit on an unpaid, past-due negotiable promissory note, it is the duty of the trial court to direct a verdict in favor of the plaintiff, where the uncontradicted evidence of witnesses whose credibility is not questioned shows that the plaintiff is a *bona fide* holder of the note; that he purchased it for value before maturity, without knowledge of any infirmity therein, or of any facts indicating bad faith in taking it." The facts of that case were very much like those in the case at bar. We are therefore of opinion that the evidence does not support the verdict.

The judgment of the district court is reversed and the cause is remanded for further proceedings.

REVERSED.

LETTON, ROSE and FAWCETT, JJ., not sitting.