SHAWNEE STATE BANK, APPELLEE, v. ALVIN LYDICK, APPELLANT.

FILED JULY 19, 1922. No. 22051.

1. **Bills and Notes: ACTION BY INDORSEE: INNOCENT PURCHASER: PROOF.** "In an action by an indorsee against the maker upon a

promissory note, when it is shown that it was obtained by fraud practiced upon the maker, the plaintiff, in order to recover, must allege and prove that he took the note in good faith in the ordinary course of business and paid value, without notice of any defense thereto or infirmity in the note." *Auld v. Walker*, 107 Neb. 676.

2. ———: ———: ———: QUESTION FOR JURY. "Whether plaintiff has sufficiently satisfied the burden resting upon him and made good his claim to be an innocent purchaser of a note is a question of fact for the jury, save in those instances where the testimony is not only consistent with the good faith of such purchase, but is such that no fair-minded person can draw any other inference therefrom." *Auld v. Walker*, 107 Neb. 676.

3. ———: INDORSEMENT: PROOF. Where the indorsement by the payee of a note is denied, the introduction in evidence of the note having thereon an indorsement purporting to be that of the payee, without proof that the indorsement is that of the payee, or without offering the indorsement independently of the note, does not carry with the note as evidence such indorsement, unless the offer is sufficiently broad to, and did, include such indorsement, and proof is made that the indorsement was made by the payee or some person authorized to make the indorsement.

APPEAL from the district court for Douglas county: L. B. DAY, JUDGE. *Reversed.*

*North & Donovan*, for appellant.

*Stout, Rose, Wells & Martin*, contra.

Heard before LETTON, DEAN and DAY, JJ., CLEMENTS (E. J.) and WELCH, District Judges.

WELCH, District Judge.

This is an action brought by appellee on a promissory note for the sum of $2,500, dated August 14, 1919, due one year from date, with interest at 8 per cent. from its date, executed by the appellant, Alvin Lydick, in favor of the Missouri Valley Cattle Loan Company. The plaintiff alleged that before said note became due the Missouri Valley Cattle Loan Company, for a valuable consideration paid by plaintiff in the regular course of business, sold, indorsed, transferred and delivered said note to plaintiff.

The defendant, Lydick, denied that the Missouri Valley Cattle Loan Company sold, indorsed, transferred and delivered said note to plaintiff; denied that the plaintiff was the owner and holder of said note for value, and alleged that there was no consideration for said note. He also alleged facts constituting fraud in the inception of said note. Plaintiff replied by general denial. The plaintiff at the commencement of the trial proceeded to introduce evidence to show that it purchased said note in good faith, for a valuable consideration, before maturity, without notice of any infirmity in the note. After plaintiff had introduced the evidence relied upon by it to establish the foregoing facts and rested, the defendant, Lydick, proceeded to introduce and offer evidence in support of his answer. Upon objection by plaintiff that the same was irrelevant and immaterial, all evidence offered by said defendant to prove his allegations of want of consideration and fraud in the inception of the note was excluded by the court. The court also, on plaintiff's objection, denied the said defendant the right to prove the specific facts offered by him to establish want of consideration of the note and fraud in its inception. Upon the close of the trial the court, on motion therefor, discharged the jury and found for the plaintiff and against the defendant, Lydick, and also against his codefendant, Missouri Valley Cattle Loan Company, for the full amount of the note with interest. From the judgment rendered on this finding the defendant, Lydick, has appealed.

The question now to be determined is whether or not the purchase of said note, in good faith, for a valuable consideration, by plaintiff, and its indorsement and delivery before it became due by the payee thereof to plaintiff, was established by the evidence to such an extent that there was nothing for the jury to pass upon. If each and all of said facts were not so established, then such of them as were not so established by the evidence were for the jury to determine, and not the court, and there was error in not submitting the same to the jury, and also error

in excluding the evidence offered by the defendant, Lydick, to prove want of consideration and fraud in the inception of the note.

The evidence introduced by plaintiff to prove that it was an innocent holder of the note for value, in good faith, before the same became due, tended to show that before maturity of the note the plaintiff, by its cashier, who conducted all the negotiations therefor, purchased said note and paid therefor its face value with accrued interest. The cashier of plaintiff testified that he had no knowledge of the consideration for the note or of any defense thereto. He testified that he purchased said note through one Huttig, a note broker residing at Muscatine, Iowa, who was also engaged in the manufacturing business at that point; that before the purchase thereof he had a conversation with said Huttig at Topeka and in reference thereto testifies as follows: "He was there; it was either the last part of July or in August; I do not remember the date; and he said he would have a lot of this cattle loan paper. He thought some good farmers' paper. He did not say good cattle loan notes; he said good farmers' and bankers' paper, and wanted to know if we had funds, if we were in financial condition to handle them, and I told him I would take it up with the board and he might submit us a list." On cross-examination said witness produced two letters received by him from said Huttig in reference to the transaction, and testifies that he did not have there all of the correspondence he had with Huttig. He also testifies that Huttig furnished him with a financial statement made by the Missouri Valley Cattle Loan Company. This statement was introduced in evidence and showed among its resources the following items: "Commission, $117,-525;" "paper on hand, $508,591.22;" "paper past due, $62,-251.57;" "paper redeemed awaiting maturity, $17,055.61;" "loans sold on approval, $52,656.45;" "notes receivable, $269,387.48;" "rediscounts pending, $89,145.24;" "suspense, $8,554.16." Said statement showed among its liabilities items, "paper paid not redeemed, $43,593.68;" "es-

crow, $276,780.94." The court in the trial, on objection by plaintiff, would not permit plaintiff's cashier to testify what his understanding was as to said items, "commission, $117,525" and "suspense, $8,554.16." To the ordinary layman these items without explanation are unintelligible. He would also think that the item, "paper on hand, $508,-591.22," would include the items "paper past due," "paper redeemed awaiting maturity," "loans sold on approval," "notes receivable," and "rediscounts pending," above set forth. Without any explanation as to those items, it would appear as if there was a duplication of the assets in said statement. It is also unintelligible how property in "escrow" can become a liability, unless it be by a conversion of the property in escrow. And such would be the interpretation naturally to be placed upon such a statement. Here was in the hands of the plaintiff before it purchased the note in suit notice that the payee of the note had property in escrow which was a liability against the payee. Such property, on account of the nature of the business of the payee, one would naturally infer would be notes in escrow. Plaintiff's cashier also testified that he was informed by said Huttig that he (Huttig) was to receive 5 per cent. commission for selling the note, and that plaintiff should apply this commission on an indebtedness then owing to plaintiff by said Huttig. Plaintiff purchased said note September 12, 1919, paying therefor its face value with accrued interest, and crediting the said note broker on his indebtedness to plaintiff 5 per cent. of the face of the note on account of said broker's commission for selling the same. And at the same time it purchased a number of other notes in favor of the Missouri Valley Cattle Loan Company, and prior thereto in the month of August had also purchased through said Huttig other notes in favor of Missouri Valley Cattle Loan Company. The aggregate amount of notes so purchased by plaintiff was $68,000, all of which were purchased on the same terms and said commission of 5 per cent. credited on said note broker's indebtedness to plaintiff. The cashier of plaintiff also testi-

fied that he purchased said notes from a list of notes in favor of Missouri Valley Cattle Loan Company submitted to him by said Huttig; that he had never before heard of the Missouri Valley Cattle Loan Company, but that, in addition to examining said financial statement of said company, and reports submitted to him by said note broker covering the makers and indorsers of the notes, he made an independent investigation through the bank at Mr. Lydick's home and selected this note with others for purchase. Said cashier also testified that he did not think that note brokers usually received 5 per cent. commission for selling notes.

It would seem that the paying of a commission of 5 per cent. by the payee of said note for selling the same would not be in the ordinary course of business unless some reason therefor is shown. The name of payee, Missouri Valley Cattle Loan Company, would imply that it was engaged in loaning money on cattle security or to farmers. The note bore interest at 8 per cent. and was due in one year. It was sold within about one month after its date and 5 per cent. of the face value paid as a commission for making the sale. This would make the cost to the Missouri Valley Cattle Loan Company for the money it received for the note such that, had it been paid as interest on that amount of money to the maturity of the note it sold, the interest would be usurious.

Negotiable notes bought by a bank cashier cannot as a matter of law be said to have been purchased in good faith in the usual course of business, so as to cut off the defense of fraudulent inception on the part of the maker, a farmer, known to the cashier, who had never engaged in any business requiring the discounting of paper to the extent represented by the notes which were executed, 200 miles from home, if they were purchased at a usurious rate of interest from the payee, a stranger, without any inquiry on the part of the cashier as to their origin or the existence of equities in favor of the maker; the question of good faith is for the jury. *Canajoharie Nat. Bank v. Diefendorf*, 123

N. Y. 191. The cashier of a bank, who is also an owner of its capital stock, is not a disinterested witness when testifying as to the good faith of his purchase of negotiable paper, so his testimony must be regarded as controlling if not contradicted; the question of his credibility is for the jury. *Canajoharie Nat. Bank v. Diefendorf, supra.*

"In an action against the maker upon promissory notes, when it is shown that they were obtained by fraud practiced upon the maker and were without consideration, the plaintiff in order to recover must allege and prove that he took the notes in good faith in the usual course of business and paid value, without notice of any defense thereto." *Ostenberg v. Kavka,* 95 Neb. 314. "In such case the question of the good faith of the plaintiff is for the jury, and their verdict cannot be controlled and directed by the court, if one might reasonably derive inferences from the character and circumstances of the transaction which would lead ordinary minds to a different conclusion." *Ostenberg v. Kavka, supra.*

No attempt was made to show why the Missouri Valley Cattle Loan Company, after loaning its money at 8 per cent. interest, should pay 5 per cent. for selling one of its notes due within less than one year from the time of its sale. It could not be for the purpose of raising money to again loan out at 8 per cent. The transaction is not shown by the evidence of plaintiff to be in the ordinary course of business on the part of the payee of a note who is engaged in the business of loaning money and taking notes therefor. The appellee in its argument says that it assumed the burden of proving that it was the *bona fide* purchaser of the note before maturity. By making this argument in this court it concedes that there was fraud in the inception of the note, but appellee made no such concession in the record on the trial of the case in the court below. The exclusion by the court of evidence offered by the maker of the note to prove fraud in its inception was error, therefore, unless the plaintiff had sustained the burden of proof cast upon it by fraud in the inception of the note to such

an extent that there was no question in reference thereto for consideration by the jury. No attempt is made to show that plaintiff sought any explanation as to why the Missouri Valley Cattle Loan Company was selling its paper out of the ordinary course of business of legitimate concerns of its character. The ambiguous financial statement of the Missouri Valley Cattle Loan Company was before plaintiff before it purchased the note in question. This statement showed thereon as liability, "paper paid and not redeemed" and "escrow." These items unexplained would suggest improper practices by the payee of the note. Plaintiff sought no explanation thereof. This court in the recent case of *Auld v. Walker,* 107 Neb. 676, holds: "Whether plaintiff has sufficiently satisfied the burden resting upon him and made good his claim to be an innocent purchaser of a note is a question of fact for the jury, save in those instances where the testimony is not only consistent with the good faith of such purchase, but is such that no fair-minded person can draw any other inference therefrom." In the opinion in said case it is said: "Although lack of knowledge, suspicious circumstances, failure to make inquiry, and negligence will not in themselves establish bad faith in the plaintiff, such facts, where the burden is upon him to establish the innocent character of his purchase, and the only evidence offered was his own testimony, constitute evidence of bad faith sufficient to take the question to the jury. *Ostenberg v. Kavka,* 95 Neb. 314."

This court in *Central Nat. Bank v. Ericson,* 92 Neb. 396, said: "Reasons for this conclusion were recently stated by the supreme court of Iowa as follows: 'It is ordinarily to be expected, in these cases, that the purchaser will testify to his good faith and want of notice, and that defendant is compelled to rely upon circumstantial evidence to rebut such showing. Whether plaintiff has sufficiently satisfied the burden resting upon him and made good his claim to be an innocent purchaser is therefore a question for the jury, save in those instances where the testimony is not only consistent with the good faith of such

Shawnee State Bank v. Lydick.

purchase, but is such that no fair-minded person can draw any other inference therefrom. A categorical denial of notice or knowledge is something which in many, if not in most, instances cannot be opposed by direct proof; and the credibility of the witnesses, their interest in the case, the reasonableness or unreasonableness of their statements, the time, place and manner of the transaction, its conformity to or its departure from the ordinary methods of business, and all the other facts and circumstances which, though of slight moment in themselves, yet, when taken together, give character and color to the purchase under inquiry, constitute a showing which the court cannot properly pass upon as a matter of law.' *Arnd v. Aylesworth,* 145 Ia. 185, 29 L. R. A. n. s. 638."

A purchaser in good faith should be one who has purchased with due regard for the rights of the maker, and not one, who, relying wholly upon paying value for the note and purchasing before maturity without knowledge of any defense, is indifferent as to whether or not the same was honestly obtained from the maker. Where the evidence tends to show such indifference the question of good faith is for the jury. We think from the foregoing facts and circumstances in evidence the question of the good faith of plaintiff in purchasing said note should have been submitted to the jury, for in determining that question it is necessary to assume the existence of every material fact which the evidence received and offered in behalf of the defendant, Lydick, tended to prove. By so doing the fact of want of consideration and fraud in the inception of the note must be assumed and the burden of proof was thereby cast upon plaintiff to prove its good faith in the purchase of the note.

In addition to the foregoing reasons for finding error in taking the case from the jury, we find in the record no evidence nor offer of evidence to prove that said note was indorsed by the payee at any time. The note was introduced in evidence, but the indorsement on the back thereof purporting to be that of Missouri Valley Cattle Loan Com-

pany was not offered in evidence, nor was there any attempt to prove that the indorsement was made by the Missouri Valley Cattle Loan Company or by any officer thereof, or to show authority of any person to make such indorsement. The offer and reception in evidence of the note with the indorsement thereon does not introduce and carry with it as evidence such indorsement, unless the offer and reception were sufficiently broad to and did include the indorsement. To effect this it was necessary that the indorsement be identified, offered and received in and of itself independently. *Schroeder v. Nielson*, 39 Neb. 335; *Johnson v. English*, 53 Neb. 530; *Capitol Hill State Bank v. Rawlins Nat. Bank*, 24 Wyo. 423; note, 11 A. L. R. 957.

The appellee quotes from *First Nat. Bank v. McKibben*, 50 Neb. 513: "In an action by an indorsee of a negotiable promissory note against the maker, its mere production by the plaintiff, duly indorsed, raises a presumption of law that it was transferred before maturity and for value, and the burden is on the defendant to show that plaintiff is not an innocent holder." The foregoing does not say that the mere production of a note raises a presumption of law that the note was duly indorsed. Before the presumption of law therein set forth arises, the indorsement of the note, if denied, must be proved. The provision of the statute that every holder is deemed *prima facie* a holder in due course is held to refer to a holder by genuine indorsement. *Vickery v. Burton*, 6 N. Dak. 245. It cannot be said that the indorsement by payee was admitted by the defendant, Lydick, by his offer to prove fraud in the inception of the note, nor by any other act during the trial. While possession by plaintiff was *prima facie* evidence of ownership of the note, indorsement of such note before the same is due by the payee must be proved, where the same is denied in the answer, to constitute one a holder in due course, so as to cut off all defenses thereto. *Britton v. Berry*, 20 Neb. 325.

"The possession of the note by plaintiff, being *prima facie*

evidence of ownership thereof, if the maker had offered no proof of a defense thereto, plaintiff would have been entitled to recover without proof of indorsement by the payee. But upon proof or offer of proof of fraud in the inception of the note, the burden of proof was cast upon plaintiff to prove that it was a holder in due course and would require proof of the indorsement. The evidence shows that the cashier of plaintiff was the only person connected with plaintiff's bank participating in the purchase of said note. It was unnecessary, therefore, for plaintiff to prove that no other officer of plaintiff had notice of defenses to the note.

The court therefore erred in excluding from the jury evidence offered by the defendant, Lydick, to prove want of consideration for and fraud in the inception of the note sued on. The court also erred in not submitting to the jury the question of good faith in plaintiff in purchasing said note. The judgment is therefore reversed as to the defendant, Alvin Lydick, and remanded for a new trial as to him.

REVERSED.