SHAWNEE STATE BANK, APPELLEE, v. H. E. VANSYCKLE, APPELLANT.

FILED JULY 19, 1922. No. 22052.

1. **Bills and Notes:** ACTION BY INDORSEE: INNOCENT PURCHASER: PROOF. "In an action by an indorsee against the maker, upon a promissory note, when it is shown that it was obtained by fraud practiced upon the maker, the plaintiff, in order to recover, must allege and prove that he took the note in good faith in the ordinary course of business and paid value, without notice of any defense thereto or infirmity in the note." *Auld v. Walker*, 107 Neb. 676.

2. ———: ———: ———: QUESTION FOR JURY. "Whether plaintiff has sufficiently satisfied the burden resting upon him and made good his claim to be an innocent purchaser of a note is a question of fact for the jury, save in those instances where the testimony is not only consistent with the good faith of such purchase, but

is such that no fair-minded person can draw any other inference therefrom." *Auld v. Walker,* 107 Neb. 676.

3. **Witnesses:** CREDIBILITY: QUESTION FOR JURY. However improbable facts testified to by a witness may be, such improbability, and their denial by other witnesses, will not take from the jury the determination of what credit should be given to the witness testifying to such improbable fact or facts, unless such facts are contrary to the undisputed physical facts or are impossible.

4. **Bills and Notes:** INDORSEMENT: PROOF. "Where the indorsement by the payee of a note is denied, the introduction in evidence of the note having thereon an indorsement purporting to be that of the payee, without proof that the indorsement is that of the payee, or without offering the indorsement independently of the note, does not carry with the note as evidence such indorsement, unless the offer is sufficiently broad to, and did, include such indorsement, and proof is made that the indorsement was made by the payee or some person authorized to make the indorsement." *Shawnee State Bank v. Lydick, ante,* p. 76.

APPEAL from the district court for Douglas county: JAMES M. FITZGERALD, JUDGE. *Reversed.*

*North & Donovan,* for appellant.

*Stout, Rose, Wells & Martin,* contra.

Heard before LETTON, DEAN and DAY, JJ., CLEMENTS (E. J.), and WELCH, District Judges.

WELCH, District Judge.

This is an action brought by appellee on a promissory note for the sum of $12,500, dated May 19, 1919, due one year from date, with interest at 8 per cent. from its date, executed by the appellant, H. E. Vansyckle, in favor of the Missouri Valley Cattle Loan Company. The plaintiff alleged that before maturity of said note the Missouri Valley Cattle Loan Company, for a valuable consideration paid by plaintiff in the regular course of business, sold, indorsed, transferred and delivered it to plaintiff. The defendant, Vansyckle, denied that the Missouri Valley Cattle Loan Company sold, indorsed, transferred and delivered said note to plaintiff; denied that plaintiff was the owner and holder for value of said note; and alleged that

there was no consideration for said note. He also alleged facts constituting fraud in the inception of said note. Plaintiff replied by general denial. The plaintiff at the commencement of the trial admitted to the jury that the defendant, Vansyckle, has a good defense to said note, on the grounds of fraud and lack of consideration, against the payee of the note. Plaintiff then proceeded to introduce evidence to show that it purchased said note in good faith, for a valuable consideration, before maturity, without notice of any infirmity in the note. Upon the close of the trial the court, on motion therefor by plaintiff, instructed the jury to find for the plaintiff and against the defendant, Vansyckle, and also his codefendant, Missouri Valley Cattle Loan Company, for the full amount of the note with interest; whereupon the jury returned such a verdict. From the judgment rendered on this verdict the defendant, Vansyckle, has appealed.

The question now to be determined is whether or not the purchase of said note, in good faith, for a valuable consideration, by plaintiff, and its indorsement and delivery before it became due by the payee thereof to plaintiff, was established by the evidence to such an extent that there was nothing for the jury to pass upon. If each and all of said facts were not so established, then such of them as were not so established were for the jury to determine, and not the court, and there was error in not submitting the same to the jury.

To prove that it was an innocent holder of the note for value, in good faith, before the same became due, plaintiff called as a witness F. P. Elmore, its cashier. He testified that he had general conduct of the affairs of plaintiff, and had been making the loans of the bank and purchasing notes for the bank since June 1, 1919; that nobody else during that time made loans for or purchased notes for the plaintiff. He testified that during the fall and summer of 1919 he purchased for plaintiff promissory notes given to the Missouri Valley Cattle Loan Company to the amount of about $68,000, and that included therein

was the note in suit; that he purchased these notes, not direct, but from one H. W. Huttig, Muscatine, Iowa; that said Huttig was a note broker, who was also engaged in the sash and door business, and that he had known Huttig for 10 or 15 years. Said Elmore also testified that in the last of July or first of August, in plaintiff's office in Topeka, he first had a conference with said Huttig about the purchase of these Missouri Valley Cattle Loan Company notes; that he did not purchase any notes from him at that time, but made the first purchase in August. He does not testify as to what took place at that conference. Said Elmore further testified that he purchased the note in suit August 26, 1919, for Shawnee State Bank, through said H. W. Huttig, the note being sent direct from Missouri Valley Cattle Loan Company, and that, when he received it, it had that company's indorsement on the back; that the bank paid for the note $12,500 and accrued interest figured at the rate called for in the note. Elmore further testified that at the time he purchased the note he did not know the defendant, Vansyckle, had never heard of him, nor had had any dealings with the Missouri Valley Cattle Loan Company; that before he purchased he wrote a bank as to the responsibility of Vansyckle, and that he had no information about the details of the organization of the Missouri Valley Cattle Loan Company, did not know the consideration for the note, and did not have notice or knowledge when he purchased it that Vansyckle claimed a defense to it. On cross-examination said Elmore testified that in August or September, 1919, he did not know any of the officers of Missouri Valley Cattle Loan Company; that before he bought the note he had never seen the signature of V. W. Gittings (the indorsement of said note set forth in the petition of plaintiff purports to have been made by V. W. Gittings, secretary, for Missouri Valley Cattle Loan Company). He also testified that he did not know the signature of the defendant, Vansyckle, at the time he purchased the note, made no inquiry as to what the note was given for, that Huttig told

him he was getting 5 per cent. commission for the sale of these notes, and that he received a letter from Huttig with reference to the Vansyckle and other notes. This letter was introduced in evidence, and is dated August 16, and contains the following:

"You understand the Mo. Valley Cattle Loan Co. indorses all this paper & you will see by the statement I sent you their assets are liquid. Unless you write me to the contrary Monday, I will write the Cattle Loan Co. to send notes to you with S. D. attached for par & accrued interest less 5% which you apply on my note for following: Vansyckle note $12,500; you have reports." And after listing several other notes, amounting in the aggregate, with said Vansyckle note, to $31,592.75, said letter proceeds: "& accrued interest less 5% of face to apply on my indebtedness. * * * Your friend Shaffer has taken another $10,000 this week."

Previous to this time said Elmore had received a letter from said Huttig, which is in evidence, bearing date July 3, but which he testifies as July 30. This letter is as follows:

"Dear Mr. Elmore: I am inclosing you a list of notes I have for sale. The first list from same parties Shaffer Bros. bought entire, viz., $70,000 of them. This list shows maker, net worth, rate (8%), maturity & amount. All notes are indorsed with full recourse by the Missouri Valley Cattle Loan Co. whose statement I inclose. The sale of these notes will wipe out their notes & accts. payable. Will sell you the notes at face & accrued interest & my 5% commission off the face will go to you to apply on my interest note. I have until Aug. 10th to sell these, and I hope you can handle from $30,000 to $50,000 of them. Will be here until Saturday, so write me here fully. Shaffer Bros. will take $50,000 of this lot also. These men are all well-to-do farmers & bankers. Yours truly, H. W. Huttig."

Elmore also testified that before the purchase of the Vansyckle note plaintiff had been furnished with a finan-

cial statement of Missouri Valley Cattle Loan Company. This statement was introduced in evidence. The witness Elmore testified that he thought 5 per cent. a very good commission, not too large on unknown paper; that what he would call known paper was such as Swift's and Armour's and standard paper like that; that he did not think on unknown paper this was an extra large commission. The statement of the Missouri Valley Cattle Loan Company introduced in evidence showed among its resources the following items: "Commission, $117,525;" "paper on hand, $508,591.22;" "paper past due, $62,251.57;" "paper redeemed awaiting maturity, $17,055.61;" "loans sold on approval, $52,656.45;" "notes receivable, $269,387.48;" "rediscounts pending, $89,145.24;" "suspense, $8,554.16." Said statement showed among its liabilities the items, "paper paid and not redeemed, $43,593.68;" "escrow, $276,780.94." The court in the trial, on objection by plaintiff, would not permit plaintiff's cashier to testify what his understanding was as to said items, "commission, $117,525," and "suspense, "$8,554.16." To the ordinary layman these items without explanation are unintelligible. He would also think that the item, "paper on hand, $508,-591.22," would include the items, "paper past due," "paper redeemed awaiting maturity," "loans sold on approval," "notes receivable," and "rediscounts pending," above set forth. Without any explanation as to those items, it would appear as if there was a duplication of the assets in said statement. It is also unintelligible how property in "escrow" can become a liability, unless it be by a conversion of the property in escrow. And such would be the interpretation naturally to be placed upon such statement. Here was in the hands of the plaintiff before it purchased the note in suit notice that the payee of the note had property in escrow which was a liability against payee. Such property, on account of the nature of the business of the payee, one would naturally infer would be notes in escrow. Plaintiff purchased said note August 26, 1919, paying therefor its face value with accrued interest, and credit-

ing the said note broker on his indebtedness to plaintiff 5 per cent. of the face of the note on account of said broker's commission for selling the same. And at the same time it purchased a number of other notes in favor of the Missouri Valley Cattle Loan Company. The aggregate amount of notes so purchased by plaintiff was $68,000, all of which were purchased on the same terms, and said commission of 5 per cent. thereon was credited on said note broker's indebtedness to plaintiff.

It would seem that the paying of a commission of 5 per cent. by the payee of said note for selling the same would not be in the ordinary course of business unless some reason therefor is shown. The name of payee, Missouri Valley Cattle Loan Company, would imply that it was engaged in loaning money on cattle security or to farmers. The note bore interest at 8 per cent. and was due in one year. It was sold within about three months after its date, and 5 per cent. of the face value paid as a commission for making the sale. This would make the cost to the Missouri Valley Cattle Loan Company for the money it received for the note such that, had it been paid as interest on that amount of money to the maturity of the note it sold, the interest would be usurious.

Negotiable notes bought by a bank cashier cannot as a matter of law be said to have been purchased in good faith in the usual course of business, so as to cut off the defense of fraudulent inception on the part of the maker, a farmer, known to the cashier, who had never engaged in any business requiring the discounting of paper to the extent represented by the notes which were executed, 200 miles from home, if they were purchased at a usurious rate of interest from the payee, a stranger, without inquiry on the part of the cashier as to their origin or the existence of equities in favor of the maker; the question of good faith is for the jury. *Canajoharie Nat. Bank v. Diefendorf*, 123 N. Y. 191. The cashier of a bank, who is also an owner of its capital stock, is not a disinterested witness when testifying as to the good faith of his purchase of

negotiable paper, so that his testimony must be regarded as controlling if not contradicted; the question of his credibility is for the jury. *Canajoharie Nat. Bank v. Diefendorf, supra.*

We do not think all of the facts set up in the rule above announced are necessary to make the question of good faith in the purchase of a note a question for the jury.

"In an action against the maker upon promissory notes, when it is shown that they were obtained by fraud practiced upon the maker and were without consideration, the plaintiff in order to recover must allege and prove that he took the notes in good faith in the usual course of business and paid value, without notice of any defense thereto." *Ostenberg v. Kavka,* 95 Neb. 314. "In such case the question of the good faith of the plaintiff is for the jury, and their verdict cannot be controlled and directed by the court, if one might reasonably derive inferences from the character and circumstances of the transaction which would lead ordinary minds to a different conclusion." *Ostenberg v. Kavka, supra.*

The plaintiff had notice before it purchased the note in suit that the payee of the note was paying a commission of 5 per cent. for selling notes amounting to at least $80,000. This with the notes then offered plaintiff would make $111,592.75. It would seem strange that the Missouri Valley Cattle Loan Company, after loaning its money at 8 per cent. interest, should pay 5 per cent. for selling its notes due within nine months from the time of their sale. It could not be for the purpose of raising money to again loan out at 8 per cent. The transaction is not shown by the evidence of plaintiff to be in the ordinary course of business on the part of the payee of a note which is engaged in the business of loaning money and taking notes therefor. No attempt is made to show that plaintiff sought any explanation as to why the Missouri Valley Cattle Loan Company was selling its paper out of the ordinary course of business of legitimate concerns of its character. The ambiguous financial statement of Missouri Valley

Cattle Loan Company was before plaintiff before it purchased the note in question. This statement showed thereon as liability, "paper paid and not redeemed" and "escrow." These items unexplained would suggest improper practices by the payee of the note. Plaintiff sought no explanation thereof. This court in the recent case of *Auld v. Walker*, 107 Neb. 676, holds:

"Whether plaintiff has sufficiently satisfied the burden resting upon him and made good his claim to be an innocent purchaser of a note is a question of fact for the jury, save in those instances where the testimony is not only consistent with the good faith of such purchase, but is such that no fair-minded person can draw any other inference therefrom." In the opinion in said case it is said: "Although lack of knowledge, suspicious circumstances, failure to make inquiry, and negligence will not in themselves establish bad faith in the plaintiff, such facts, where the burden is upon him to establish the innocent character of his purchase, and the only evidence offered was his own testimony, constitute evidence of bad faith sufficient to take the question to the jury. *Ostenberg v. Kavka*, 95 Neb. 314."

This court in *Central Nat. Bank v. Ericson*, 92 Neb. 396, said: "Reasons for this conclusion were recently stated by the supreme court of Iowa as follows: 'It is ordinarily to be expected, in these cases, that the purchaser will testify to his good faith and want of notice, and that defendant is compelled to rely upon circumstantial evidence to rebut such showing. Whether plaintiff has sufficiently satisfied the burden resting upon him and made good his claim to be an innocent purchaser is therefore a question for the jury, save in those instances where the testimony is not only consistent with the good faith of such purchase, but is such that no fair-minded person can draw any other inference therefrom. A categorical denial of notice or knowledge is something which in many, if not in most, instances cannot be opposed by direct proof; and the credibility of the witnesses, their interest in the case,

the reasonableness or unreasonableness of their state-
ments, the time, place and manner of the transaction, its
conformity to or its departure from the ordinary methods
of business, and all the other facts and circumstances
which, though of slight moment in themselves, yet, when
taken together, give character and color to the purchase
under inquiry, constitute a showing which the court can-
not properly pass upon as a matter of law.' *Arnd v. Ayles-
worth,* 145 Ia. 185, 29 L. R. A. n. s. 638."

The plaintiff herein had notice of all these facts herein-
before stated, and without knowing the signature of the
maker of said note, nor that of the person by whom the
alleged indorsement of said note purports to have been
made, not even knowing that such person was an officer of
the payee nor that he had authority as such officer to make
such indorsement, purchased the same. Reasonable minds
might say that a note purchased with such knowledge and
under such circumstances was not purchased in the ordin-
ary course of business. Whether the purchase with such
knowledge and under such circumstances was a purchase
in the ordinary course of business was therefore a ques-
tion for the jury. A purchase in the ordinary course of
business is not proved by proof that the purchase was made
in the manner that the purchaser usually transacts such
business. It must be shown to have been purchased in the
manner that such business is generally transacted by per-
sons engaged in that business who have due regard for the
interests of all persons affected by the transaction.

A purchaser in good faith should be one who has pur-
chased with due regard for the rights of the maker, and
not one who, relying wholly upon paying value for the
note and purchasing before maturity without knowledge
of any defense, is indifferent as to whether or not the same
was honestly obtained from the maker. Where the evi-
dence tends to show such indifference the question of good
faith is for the jury. We think from the foregoing facts
and circumstances in evidence the question of the good
faith of plaintiff in purchasing said note, and whether it

was purchased in the ordinary course of business, should have been submitted to the jury. Fraud in the inception of the note was admitted by plaintiff. The burden of proof was thereby cast upon plaintiff to prove its good faith in the purchase of the note and purchase in the ordinary course of business.

The defendant, Vansyckle, testified that Elmore, the cashier of plaintiff, called at his home in 1920, and told him he was out trying to make settlement for the notes that they had purchased from the Missouri Valley Cattle Loan Company, and told him that Huttig had owed him a large amount of money and he was getting his money from this man Huttig in the sale and purchase of these notes; that this man Huttig was getting 10 per cent. commission. He further said he knew there was something wrong with the notes; that he knew they were obtained through fraud, and that they were discounting the notes 25 per cent. to him. The witness, Elmore, on rebuttal, denied making the foregoing statements to the defendant, Vansyckle, and denied making each of them. However improbable, the previous facts testified to by the defendant, Vansyckle, the weight and credit to be given to him as a witness, and to his said testimony, was for the jury. The court could not take it from the jury. If true, they should be considered by the jury in determining the good faith of plaintiff and whether its purchase of said note was in the ordinary course of business.

In addition to the foregoing reasons for finding error in taking the case from the jury, we find in the record no evidence nor offer of evidence to prove that said note was indorsed by the payee at any time. The note was introduced in evidence, but the indorsement on the back thereof purporting to be that of Missouri Valley Cattle Loan Company was not offered in evidence, nor was there any attempt to prove that the indorsement was made by the Missouri Valley Cattle Loan Company or by any officer thereof, or to prove the authority of any person to make such indorsement. The offer and reception in evidence of

the note with the indorsement thereon does not introduce and carry with it as evidence such indorsement, unless the offer and reception were sufficiently broad to and did include the indorsement. To effect this it was necessary that the indorsement be identified, offered and received in and of itself independently. *Schroeder v. Nielson*, 39 Neb. 335; *Johnson v. English*, 53 Neb. 530; *Capitol Hill State Bank v. Rawlins Nat. Bank*, 24 Wyo. 423, note, 11 A. L. R. 957.

The appellee quotes from *First Nat. Bank v. McKibben*, 50 Neb. 513: "In an action by an indorsee of a negotiable promissory note against the maker, its mere production by the plaintiff, duly indorsed, raises a presumption of law that it was transferred before maturity and for value, and the burden is on the defendant to show that plaintiff is not an innocent holder." The foregoing does not say that the mere production of a note raises a presumption of law that the note was duly indorsed. Before the presumption of law therein set forth arises, the indorsement of the note, if denied, must be proved. The provision of the statute that every holder is deemed *prima facie* a holder in due course is held to refer to a holder by genuine indorsement. *Vickery v. Burton*, 6 N. Dak. 245. It cannot be said that the indorsement by payee was admitted by the defendant, Vansyckle, by his plea of fraud in the inception of the note, nor by any other act during the trial. While possession by plaintiff was *prima facie* evidence of ownership of the note, indorsement of such note before the same is due by the payee must be proved, where the same is denied in the answer, to constitute one a holder in due course, so as to cut off all defenses thereto. *Britton v. Berry*, 20 Neb. 325.

The possession of the note by plaintiff, being *prima facie* evidence of the ownership thereof, if there had been no fraud in its inception, plaintiff would have been entitled to recover without proof of indorsement by the payee. But upon the admission by plaintiff of fraud in the inception of the note, the burden of proof was cast upon plaintiff

to prove that it was a holder in due course, and that would require proof of the indorsement. The testimony of Elmore, cashier of plaintiff, that when he received the note it had thereon the indorsement of the Missouri Valley Cattle Loan Company was not proof that such indorsement was genuine. The witness so testifying did not know the signature of the party signing said instrument, nor that he had authority to make it. Such testimony was only to the effect that when he received the note it had indorsed thereon the words alleged in the petition to be the indorsement of Missouri Valley Cattle Loan Company. Even that indorsement was not offered in evidence.

The evidence shows that the cashier of plaintiff was the only person connected with plaintiff bank participating in the purchase of said note. It was unnecessary, therefore, for plaintiff to prove that no other officer of plaintiff had notice of defenses to the note.

The court erred in not submitting to the jury the question of good faith of plaintiff in purchasing said note and its purchase in the ordinary course of business. The judgment is therefore reversed as to the defendant, H. E. Vansyckle, and remanded for new trial as to him.

REVERSED.