FIRST BANK OF ULYSSES, APPELLEE, v. JAMES P. BIRKEL, APPELLANT.

FILED FEBRUARY 12, 1926. No. 23509.

1.   Bills and Notes: FRAUD: BURDEN OF PROOF. In an action by a bank against the maker of a promissory note, when it is shown that the note in suit was obtained by fraud practiced upon the maker, the bank, in order to recover, must prove that the officer or agent of the bank who negotiated the purchase of the note did so in good faith, without notice of any defense or infirmity in the note.

2.   ———: INDORSEMENT: BURDEN OF PROOF. Where the indorsement by the payee of a note in suit is denied, the burden is on the plaintiff to establish the fact that such indorsement was made by the payee or by some person thereunto authorized by the payee.

3.   Principal and Agent: INDORSEMENT OF NOTE: BURDEN OF PROOF. A party asserting ownership of commercial paper through an indorsement of one other than the owner has the burden of

proving that the indorser was authorized by the owner to make the indorsement. *State Bank v. Weeks*, 45 S. Dak. 639.

4. **Appeal:** REVERSAL. It is elementary that, in a case where the evidence does not support the verdict, or the judgment of the court, such verdict or such judgment, as the case may be, must be vacated.

5. **Bills and Notes:** FRAUD: BURDEN OF PROOF. "Where fraud in the inception of a note is pleaded as a defense and supported by proof, in an action by an indorsee against the maker, the burden is on plaintiff to show he is a *bona fide* holder." *Central Nat. Bank v. Ericson*, 92 Neb. 396.

APPEAL from the district court for Butler county: WILLIAM M. MORNING, JUDGE. *Affirmed in part, and reversed in part.*

*Roper & Fuller* and *P. A. Tomek,* for appellant.

*W. M. Cain* and *C. M. Skiles, contra.*

Heard before MORRISSEY, C. J., DEAN, DAY, THOMPSON and EBERLY, JJ.

DEAN, J.

First Bank of Ulysses, doing business at Ulysses, Nebraska, plaintiff herein, began this action against James P. Birkel, defendant, to recover judgment on two certain promissory notes in the principal sum of $4,000 and $5,000, respectively.

For its first cause of action plaintiff pleaded the $4,000 note. A copy follows:

"$4,000                                                July 23, 1919.

"Nine months after date, I promise to pay to the Missouri Valley Cattle Loan Company, or order, four thousand dollars, payable at its office in Omaha, Neb., with interest at the rate of eight per cent. per annum from date.

"J. P. Birkel."

For its second cause of action plaintiff pleaded the $5,000 note. A copy follows:

"$5,000                                                July 24, 1919.

"Six months after date, I promise to pay to the Missouri

Valley Cattle Loan Company, or order, five thousand dollars, payable at its office in Omaha, Neb., with interest at the rate of eight per cent. per annum from date.

"J. P. Birkel."

On the face of the above note is this inscription:

"Protested for nonpayment 1-24-20. J. A. Pestal, Notary Public."

The following indorsement, besides the required revenue stamps, appears on the reverse side of both notes: "Missouri Valley Cattle Loan Co., A. B. Kohl."

When the evidence of the parties was submitted, plaintiff moved for a directed verdict on both notes, and defendant moved for a directed verdict of dismissal as to both notes. The court sustained plaintiff's motion as to the first cause of action only, namely the $4,000 note, and directed a verdict for $4,000 with interest at 8 per cent. per annum from its date. As to the second cause of action, namely, the $5,000 note, the court sustained defendant's motion and directed a verdict of dismissal. Both parties have appealed. By agreement of the parties only one transcript and one bill of exceptions have been brought to this court.

At the outset reference must be had to a $1,000 note, which involved the parties hereto, and which is not directly involved in this action. The record shows that, on July 23, 1919, defendant Birkel executed a $1,000 promissory note, bearing 8 per cent. annual interest, in favor of the Missouri Valley Cattle Loan Company, for the purchase of certain of its corporate stock. This note was payable at sight, and it bears the same indorsements as those which appear on the two notes sued on in this action, and was obtained by plaintiff at the same time that it obtained the $4,000 note. The $1,000 note, however, was reduced to judgment January 8, 1923, in an action brought by plaintiff, which was unappealed from. Notwithstanding this $1,000 note is not directly involved here, as above noted, it becomes necessary, for reasons hereinafter appearing, to notice briefly the court proceedings which were had in respect of the note, and more particularly the pleadings and the court's

findings. This is made necessary from the fact that plaintiff, for some reason not altogether clear, seems to base its right to recover, not only on the facts presented by the present record, but also on the proceedings had in the $1,000-note action.

Plaintiff's argument, in brief, is that defendant is estopped from setting up any defense to the notes in suit, for the reason, among others, that in the judgment which was rendered on the $1,000 note the findings, in substance, are that the $1,000 note was one of a series of three notes aggregating $10,000, the other two notes being the $4,000 and $5,000 notes sued on herein, and that defendant is bound thereby. The court's material findings in the former suit follow:

The court finds, "from the evidence, that the note sued upon in this action was one of a series of three notes aggregating $10,000, the other being for $4,000, dated July 23, 1919, and one for $5,000, dated July 24, 1919, respectively, all duly executed by the defendant James P. Birkel, and payable to the Missouri Valley Cattle Loan Company, and by said company sold and indorsed to the plaintiff in due course and for value and before maturity, and that the plaintiff purchased each and all of said notes for value and in due course and without knowledge or notice of any infirmity in their procuration and in good faith, and that plaintiff was, at the time of the commencement of this action, and still is, the owner and holder in due course of each and all of said notes."

Plaintiff's petition, in the $1,000 note action, was introduced in evidence. From this it clearly appears that plaintiff confined its allegations to the $1,000 note solely and omitted all reference to the $4,000 and $5,000 notes. In this state of the record, the last-mentioned notes not having been pleaded, it is elementary that the above findings and judgment, in respect of any note save the $1,000 note, are a nullity and are of no binding force whatever. It seems to us, too, that it clearly appears, the entire record being considered, that the judgment on the $1,000 note bears no

relation to the foregoing $4,000 and $5,000 notes, and that, under the facts and the law, the $1,000 action is of no force and of no effect in the present action.  May it not be reasonably presumed that, if counsel had placed any reliance on the proceedings and judgment in the $1,000-note action, he would not have begun this action?

Plaintiff pleaded the usual and necessary allegations which go to establish an "innocent purchase" of the two notes in suit.  The outstanding fact is that A. B. Kohl fraudulently obtained the notes from Birkel.  The case before us then is:   Was the plaintiff bank by Mundy, its vice-president, an innocent purchaser of the notes?   P. H. Tobey, a bookkeeper in the bank, testified that the first time Kohl came to the bank he introduced himself to Mundy and the witness as a salesman for the Missouri Valley Cattle Loan Company, and "he explained this stock to Mr. Mundy and talked about it," and told Mundy and the witness "that he was going to solicit the country for the sale of this stock." He next saw Kohl when he came to the bank and traded the $1,000 and the $4,000 notes to Mundy for liberty bonds at par, but the then present value of the bonds is not shown. The next time that Kohl came to the bank, Tobey testified, the $5,000 note was exchanged by Kohl for a certificate of deposit issued by Mundy in the same amount.   Elsewhere in the record it appears from Mundy's evidence that this certificate of deposit was not cashed until January 28, 1920, and this was some six months after Kohl traded the Birkel notes for the bonds and the certificate of deposit.   Tobey further testified that Mundy and Tobey had Kohl under discussion, and that he told Mundy "he didn't like the looks of the man," but that Mundy said "he believed he was all right."   He further testified that he did not know whether "a commission was paid to Mr. Mundy for this business in this deal between the bank and the Missouri Valley Cattle Loan Company," but that if a commission in bonds had been paid to him it would not appear on the bank's books.   There was no cross-examination of this witness.

Mundy testified that, when Kohl brought the $1,000 and

$4,000 notes to the bank, he, Mundy, called up Mr. Birkel. On this point he testified: "I asked him if they were all right; and he said they were his notes and that they would be taken care of, and that if they were to be sold that he would sooner I have them than anybody." He further testified: "Q. Did you have any other conversation with Birkel over the phone or in any other way after the 23d about the purchasing of these notes that you bought? A. No, sir; not over the phone. Q. Well, then, as a matter of fact you didn't have the $5,000 note that you bought on that day, did you? A. I asked Mr. Birkel no questions about the $5,000 note. Q. None at all? A. No, sir. Q. That was just taken for granted by you, was it? A. It was taken for granted from his first answer. Q. Then, so far as you are concerned, you don't claim at this time that you ever made any inquiry with reference to the $5,000 note? A. No, sir; I don't. Q. Now, you made that inquiry of Birkel before you bought the notes? A. Before I bought the one and four-thousand-dollar notes; yes." Defendant denied that Mundy called him up over the telephone, and testified that he, Mundy, made no inquiry of him in regard to the purchase of the notes in suit either by telephone or otherwise.

In respect of Kohl's visit to defendant's farm, a son who was present testified: "Q. What, if anything, was said there about Mr. Mundy by Mr. Kohl? A. Well, he said if this stock wasn't all right, he says, 'You know Luke Mundy down here, he is a well educated man, and if it wasn't all right he wouldn't suggest to buy.'" Mundy denied advising Kohl to go out to defendant's farm to sell the corporate stock to him. The record discloses, however, that Mundy, of his own motion and at his own expense, went to the office of the loan company at Omaha with defendant Birkel, a very few days after the consummation of the transaction complained of, to see if something could be done to relieve defendant from the financial embarrassment into which he had been thrown by the execution of the notes fraudulently obtained from him by Kohl. If

Mundy never knew before of the fraud by which defendant was victimized in this note transaction, it seems perfectly clear to us that he found it out when he went to Omaha. Nevertheless he did not, upon his return, nor at any time, make a move to prevent the $5,000 certificate of deposit from being cashed which was issued by his bank. And it is very significant that this certificate, as the record shows, was not cashed for six months after its execution.

Is further comment necessary to show bad faith on Mundy's part, or to show that he was implicated, equally with Kohl, in the fraudulent scheme to defraud defendant from the beginning? Fraud is not a mere incident in this case. The insignia of fraud cover it, as with a garment, from its very inception. It seems that the association of Kohl and Mundy was intimate. It is not denied that Kohl approached Mundy with a proposition to become a director in the loan company. In this class of cases it is elementary that the burden is on the plaintiff to show that he is a *bona fide* holder of the note sued on. Plaintiff did not prove that Kohl had authority to indorse the note, though this question was in issue. *Shawnee State Bank v. Lydick,* 109 Neb. 76; *Auld v. Walker,* 107 Neb. 676; *Riverton State Bank v. Walker,* 107 Neb. 672; *Shawnee State Bank v. Vansyckle,* 109 Neb. 86, and cases there cited.

"Where fraud in the inception of a note is pleaded as a defense and supported by proof, in an action by an indorsee against the maker, the burden is on plaintiff to show he is a *bona fide* holder." *Central Nat. Bank v. Ericson,* 92 Neb. 396.

We recognize the rule that, where in a law action both parties move for a directed verdict, the findings of the trial court take the place of a verdict by the jury. But this rule does not abrogate that other rule which provides that, in any case, where the evidence fails to support the judgment, it becomes the duty of a reviewing court to set aside such judgment. From a review of the entire record before us, we think that the judgment, so far as it is against defendant, is not supported by the weight of evidence.

The record shows that defendant is a farmer of foreign birth, with an imperfect understanding of the English language, and of business usage as well, as such usage pertains to the safeguards which ordinarily attend the execution of negotiable notes. From the record it seems to be well established, by the weight of the evidence, that Mundy, the vice-president of the plaintiff bank, knew this. So that, even if Mundy did call defendant up and make the inquiry which he says he made in respect of the first two notes he bought, this was clearly insufficient in view of the rambling answer which Mundy testified that he received from Birkel over the telephone. This was a very important transaction for one of defendant's meager understanding of business affairs.

The banking business is one of outstanding responsibility in any community. In fact, it is everywhere conceded that the responsible banker is, from the very nature of his business, a most competent business adviser in any community, be it large or small, and that implicit reliance is, ordinarily, placed on his opinion and advice in respect of investments and business affairs generally. In respect of those who deal in negotiable instruments, either as makers, buyers, or sellers, the supreme court of Iowa made this observation:

"It is ordinarily to be expected, in these (negotiable instrument) cases, that the purchaser will testify to his good faith and want of notice, and that defendant is compelled to rely upon circumstantial evidence to rebut such showing. Whether plaintiff has sufficiently satisfied the burden resting upon him and made good his claim to be an innocent purchaser is therefore a question for the jury, save in those instances where the testimony is not only consistent with the good faith of such purchase, but is such that no fair-minded person can draw any other inference therefrom. A categorical denial of notice or knowledge is something which in many, if not in most, instances cannot be opposed by direct proof; and the credibility of the witnesses or unreasonableness of their statements, the time, place and

manner of the transaction, its conformity to or its departure from the ordinary methods of business, and all the other facts and circumstances which, though of slight moment in themselves, yet, when taken together, give character and color to the purchase under inquiry, constitute a showing which the court cannot properly pass upon as a matter of law." *Arnd v. Aylesworth,* 145 Ia. 185, 29 L. R. A. n. s. 638.

In view of the record, and of the authorities, the conclusion is that the judgment, as to the $4,000 note, which is pleaded as the first cause of action herein, must be and it hereby is reversed, and is affirmed as to the second cause of action.

AFFIRMED IN PART, AND REVERSED IN PART.

Note—See (1) 29 L. R. A. n. s. 351; 44 L. R. A. n. s. 395; L. R. A. 1918F, 1148; 3 R. C. L. p. 1072; 1 R. C. L. Supp. pp. 972-975; 4 R. C. L. Supp. p. 234.