WATKINS PRODUCTS, INC., A CORPORATION, APPELLANT, V. JAMES H. KEANE, APPELLEE.

176 N. W. 2d 230

Filed April 10, 1970. No. 37441.

Witte & Donahue, for appellant.

Everson, Wullschleger & Sutter, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SMITH, J.

Watkins Products, Inc., alleged indebtedness of James H. Keane for goods wholesaled him and for freight

charges. After jury verdict for Keane the district court overruled Watkins' alternative motion for judgment or new trial. Watkins appeals. Assigned for error are exclusion of freight charges from evidence and the rulings after verdict.

Under a requirement agreement Keane promised to pay Watkins wholesale prices and prepaid transportation charges, and to deposit in a bank $1,500 as security. Watkins promised delivery f.o.b. one of its regular shipment points. The agreement provided that either party could terminate it by postal notification.

Watkins, numbering Keane's account 3264, headed some records, "James H. Keane, 612 Spring, Friend, Nebraska," and others, "Harling Agt, Glen Keane Prin, James H. R#1, Box 76 Geneva, Nebr." A summary for 1965 is as follows:

| Date | | | No. of Entries | Dr. | Cr. |
|------|---|---|------|-----|-----|
| 3-1 | | Balance | | $1,179.22 | |
| 3-5 | | Merchandise | 3 | 606.51 | |
| 3-24 | to 5-18 | Freight | 3 | 56.20 | |
| 4-19 | to 8-24 | Merchandise | 10 | 715.16 | |
| | | Glen Harling | | | $ 101.34 |
| 12-2 | | Keane's security deposit | | | 1,537.50 |
| | | Total | | $2,557.09 | $1,638.84 |
| 12-2 | | Balance | | $ 918.25 | |

Account entries were explained. Keane on March 13, 1965, signed a statement that the balance on March 1 was correct, and at the trial he so stipulated. The latest orders personally signed by him were dated in February and represented by the entries on March 5. The 10 entries totaling $715.16 from April 19 to August 24 resulted from orders signed by Glen Harling without indication of agency.

Watkins filled 4 of the 10 orders from Glen Harling

by transporting the merchandise to Geneva in its trucks. It received delivery receipts signed by John or Betty Harling as agent for Glen Harling. No other evidence tends to disclose the relationship. Exhibits 13, 16, and 22, excluded from evidence, were memoranda setting out charges of $56.20 for transportation of merchandise in Watkins' trucks.

Keane's testimony is short. He quit retailing Watkins' products February 16, 1965, when he moved to Beatrice. Watkins' fieldman induced him to deliver the inventory to Glen and to sign an authorization form. Keane was advised it was a formality.

The authorization, undated and addressed to Watkins, was signed by Keane as principal and by Glen under the words "Authorized Agent's Signature." It provided: "I . . . authorize Glen Harling to order . . . all goods under my contract with you . . . and to conduct any correspondence in his name, or in my name . . .; and request that you fill . . . all orders he may send you, and . . . act upon . . . communications in relation thereto which you may receive from him, the same as you might . . . do with orders sent you by me, or . . . (with) communications which I might write you personally."

On March 16, 1965, Watkins wrote Keane at Friend as follows: "We have received your properly signed Authorization Blank from which we note that Mr. Glen Harling has been authorized to order goods and conduct correspondence under your Agreement."

On March 25, 1965, Watkins wrote Keane at Friend concerning his February orders as follows: "Attached are copies of . . . invoices . . . dated March '3' (5), 1965, which merchandise was delivered to you via Company-operated truck. As our files do not contain your personally signed acknowledgment of receipt of this merchandise, please sign the bottom of this letter in the space indicated. . . . 'I have received the merchandise listed on the above . . . invoices.' ——————— Dealer's Signature." The letter was returned with Glen's signa-

ture. By letter dated October 11 Watkins notified Keane it was terminating the agreement.

Only Keane and the custodian of Watkins' records testified. Availability of Glen was a guess.

The words "prepaid transportation charges" in the requirement agreement referred to carrier charges prepaid by Watkins, but not to charges for transportation in Watkins' trucks. No datum tended to prove reasonableness of the amounts in exhibits 13, 16, or 22. The exclusionary rulings were correct.

Clear, uncontradicted, self-consistent, and unimpeached business records of a party having initial production and persuasion burdens may suffice for a directed verdict in his favor. A similar rule governs testimony of an interested witness. See, City Nat. Bank v. Jones, 109 Neb. 724, 192 N. W. 509 (1923); Farmers Grain & General Shipping Assn. v. Jordan, 107 Neb. 537, 186 N. W. 528 (1922). See, also, Ferdinand v. Agricultural Ins. Co., 22 N. J. 482, 126 A. 2d 323, 62 A. L. R. 2d 1179 (1956); James, "Sufficiency of the Evidence and Jury—Control Devices Available Before Verdict," 47 Va. L. Rev. 218 at 226 (1961); generally, Note, 107 U. Pa. L. Rev. 217 (1958). Contrary intimations in Shawnee State Bank v. Vansyckle, 109 Neb. 86, 189 N. W. 607 (1922), and Shawnee State Bank v. Lydick, 109 Neb. 76, 189 N. W. 603 (1922), are disapproved. See Bobbé, "The Uncontradicted Testimony of an Interested Witness," 20 Cornell L. Q., 33 at 34, n. 7 (1934).

The stipulated balance and the debits of March 5 exceeded credits. The evidence brought those items, but not others, within the foregoing rule. Evidence of the transactions reflected in the 10 merchandise items after March 5 raised questions for the jury. The order denying the motion for judgment notwithstanding the verdict was correct. The order denying the motion for new trial was erroneous.

REVERSED AND REMANDED FOR A NEW TRIAL.