NORTH CAROLINA NATIONAL BANK v. TED R. BURNETTE AND WIFE, IRMA M. BURNETTE

No. 28

(Filed 12 July 1979)

**1. Uniform Commercial Code §§ 46, 47 — sale of collateral — notice — commercial reasonableness — burden of proof**

    A secured party seeking a deficiency judgment under G.S. 25-9-502 has the burden of establishing compliance with the twin duties of reasonable notification and commercially reasonable disposition.

Bank v. Burnette

2. **Uniform Commercial Code § 46 — sale of collateral — notice given — commercial reasonableness presumed**

   If the secured party who seeks a deficiency judgment can establish that he gave notice of a public sale of collateral in a manner which substantially complies with the procedures of Part 6 of Article 9 of the Uniform Commercial Code, he is not required to establish further that the sale was commercially reasonable.

3. **Uniform Commercial Code § 47 — sale of collateral — notice requirements — substantial compliance**

   Substantial compliance is the prescribed standard in determining whether the notice procedures outlined in G.S. 25-9-603 have been followed, and the secured party is not required to insure that the notice of sale is actually received by the debtor.

4. **Uniform Commercial Code § 47 — sale of collateral — notice — actual address of debtor**

   An "actual address" of a debtor, as used in G.S. 25-9-603(2), is an address where a notice of sale could reasonably be expected to be received by the addressee in the ordinary course of the mails.

5. **Uniform Commercial Code § 47 — sale of collateral — sufficiency of notice**

   In an action to collect a deficiency after sale of collateral, plaintiff's evidence established as a matter of law that a notice of sale mailed by plaintiff was sent to an "actual address" of debtor in substantial compliance with G.S. 25-9-603 and that plaintiff was therefore entitled to the conclusive presumption of commercial reasonableness where the evidence tended to show that plaintiff had successfully sent certified mail to defendants at Route 1, Little Switzerland, less than three months earlier in connection with other demand letters; those letters had been promptly received and acknowledged by defendants; and having successfully used that address to communicate with defendants in the recent past, plaintiff could reasonably expect that a certified letter mailed to the same address would reach defendants in the ordinary course of the mails.

6. **Uniform Commercial Code § 46; Constitutional Law § 23 — presumption of commercial reasonableness of sale — no denial of due process — enactment of statute not State action**

   There was no merit to defendants' contention that the presumption of commercial reasonableness created by G.S. 25-9-601 denied them the opportunity to contest the reasonableness of a public sale of collateral by a secured party and thereby deprived them of their property without procedural due process, since the constitutional mandate of due process applies only to actions by the government which deprive individuals of their fundamental rights, and the enactment of G.S. 25-9-601 did not constitute "State action."

7. **Rules of Civil Procedure § 50.2 — directed verdict for party with burden of proof — evidence manifestly credible**

   There are neither constitutional nor procedural impediments to directing a verdict for the party with the burden of proof where the credibility of mov-

ant's evidence is manifest as a matter of law, and three situations where credibility is manifest are: (1) where non-movant establishes proponent's case by admitting the truth of the basic facts upon which the claim of proponent rests; (2) where the controlling evidence is documentary and non-movant does not deny the authenticity or correctness of the documents; and (3) where there are only latent doubts as to the credibility of oral testimony and the opposing party has failed to point to specific areas of impeachment and contradictions.

8. **Uniform  Commercial  Code  § 46— sale  of  collateral—commercial reasonableness—evidence manifestly credible**

In an action to recover a deficiency after sale of collateral, plaintiff's evidence was manifestly credible and established as a matter of law that plaintiff mailed notice of sale to an "actual address" of the debtors in substantial compliance with G.S. 25-9-603, and judgment n.o.v. was therefore properly granted for plaintiff on the question of commercial reasonableness.

Justices COPELAND and BROCK did not participate in the consideration or decision of this case.

ON certiorari to review decision of the Court of Appeals, 38 N.C. App. 120, 247 S.E. 2d 648 (1979), reversing judgment of *Lewis, J.*, entered 17 December 1976 in MITCHELL Superior Court.

This is an action by plaintiff to collect a deficiency after sale of collateral securing a promissory note executed by defendants.

On 28 January 1974, defendants executed a promissory note to plaintiff evidencing an indebtedness of $190,000.00. To secure payment of the note, defendants executed a security agreement upon certain road grading and rock crushing equipment.

Defendants never made any payments on the indebtedness. On 29 July 1974 plaintiff wrote certified letters, return receipt requested, addressed to defendants at Route 1, Little Switzerland, North Carolina, demanding payment. These demand letters were received by defendants on 1 August 1974. The return receipt shows the delivery address was P. O. Box 121, Little Switzerland, North Carolina. When defendants thereafter failed to make any payments on the promissory note, plaintiff repossessed certain rock crushing and road grading equipment which constituted security for the indebtedness.

On 27 September 1974 plaintiff mailed by certified mail to defendant, and posted at the McDowell County Courthouse, a copy of a notice of sale of the rock crushing equipment which sale

was to take place on 18 October 1974. The rock crushing equipment was sold on that date, and there is no dispute concerning that sale.

On 24 October 1974 plaintiff mailed by certified mail to defendants, and posted at the Yancey County Courthouse, a notice of sale of the road grading equipment which was to take place on 31 October 1974. The road grading equipment was sold on 31 October 1974. A dispute has arisen as to whether this notice was mailed to an "actual address" of debtor in substantial compliance with G.S. 25-9-603.

After applying the proceeds of both sales to defendants' account, there remained a deficiency of $89,008.23. On 22 November 1974 plaintiff filed this suit for a deficiency judgment. Defendants answered in pertinent part that the two sales were not conducted in a commercially reasonable manner as required by G.S 25-9-504, and that plaintiff had disposed of property by sale which was not collateral for the loan of 28 January 1974. The case was tried before a jury.

At the close of all the evidence plaintiff moved for a directed verdict on the issue of commercial reasonableness of the sales of collateral. Plaintiff contended it had established as a matter of law substantial compliance with the notice procedures of G.S. 25-9-601, et seq., and therefore was entitled to the conclusive presumption of commercial reasonableness created by G.S. 25-9-601. Trial court denied the motion and reversed its ruling concerning plaintiff's compliance with G.S. 25-9-601, et seq., pending a jury determination as to the commercial reasonableness of the two sales.

The jury returned a verdict finding (1) that defendants were indebted to plaintiff by way of a deficiency in the amount of $89,008.23; (2) that plaintiff had not disposed of the collateral in a commercially reasonable manner and had thus damaged defendants in an amount equivalent to the deficiency, i.e., $89,008.23; and (3) that plaintiff did not dispose of any of defendants' property in which it did not have a security interest.

Upon return of the verdict plaintiff moved for judgment notwithstanding verdict (JNOV) on the question of commercial reasonableness. Trial court allowed the motion, finding that plain-

tiff had established substantial compliance with G.S. 25-9-601, *et seq.*, and therefore its sales of the rock crushing and road grading equipment were conclusively deemed commercially reasonable in all aspects.

Defendants moved for, and trial court granted, JNOV for defendants on the question of whether plaintiff had sold the property of defendants which was not pledged as collateral for the loan of 28 January 1974. By stipulation of the parties the trial court determined that defendants were entitled to a set-off of $15,000 against the deficiency judgment for damages resulting from disposition of property not pledged as collateral.

Judgment notwithstanding verdict for plaintiff in the sum of $74,008.23 ($89,008.23 less the $15,000.00 set-off) was signed accordingly, and defendants excepted and appealed. Plaintiff filed a cross-appeal.

On plaintiff's cross-appeal the Court of Appeals reversed JNOV for defendants and remanded for reinstatement of jury's verdict that plaintiff had not disposed of property not pledged as security for the loan of 28 January 1974. Defendant's new brief before this Court presents no argument and cites no authority concerning the correctness of the disposition of plaintiff's cross-appeal. As a result, this aspect of the case is deemed abandoned and is no longer before us. Rule 28, Rules of Appellate Procedure.

On defendants' appeal the Court of Appeals reversed in part the JNOV for plaintiff, holding that plaintiff's sale of the *road grading equipment* was not entitled to the presumption of commercial reasonableness created by G.S. 25-9-601 since a question of fact existed as to whether plaintiff had sent notice to an "actual address" of defendants in substantial compliance with G.S. 25-9-603. The Court of Appeals remanded the case for a jury determination on the question of substantial compliance with G.S. 25-9-603. We allowed plaintiff's petition for writ of certiorari to the Court of Appeals to review that ruling.

*Smith, Moore, Smith, Schell & Hunter, by Larry B. Sitton and Robert A. Wicker, and Watson and Dobbin, by Richard A. Dobbin, for plaintiff.*

*McLean, Leake, Talman & Stevenson, by Wesley F. Talman, Jr. and Joel B. Stevenson, for defendants.*

HUSKINS, Justice.

The trial court entered judgment for plaintiff notwithstanding the verdict (JNOV) on the ground that plaintiff, as a matter of law, had substantially complied with the procedures provided by G.S. 25-9-601, *et seq.* (Cum. Supp. 1977), for the disposition of collateral by public sale and therefore the public sale of the grading equipment was conclusively deemed "to be commercially reasonable in all aspects." G.S. 25-9-601. The first question presented by this appeal is whether the Court of Appeals erred in reversing JNOV for plaintiff on the issue of commercial reasonableness of plaintiff's disposition by public sale of the road grading equipment pledged as collateral to secure the $190,000.00 note executed by defendants on 28 January 1974.

Resolution of this question requires us to consider the rights and duties of an Article 9 secured party with respect to disposition of repossessed collateral.

[1] The procedures outlined in G.S. 25-9-601, *et seq.*, for the disposition of collateral by public sale are unique to North Carolina and supplement the provisions of G.S. 25-9-504 (Cum. Supp. 1977). Section 9-504 gives the secured party a wide latitude with respect to disposition of repossessed collateral. *See* J. White and R. Summers, Uniform Commercial Code, § 26-9 (1972). "A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing." G.S. 25-9-504(1). "Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms. . . ." G.S. 9-504(3). However, the secured party has a duty to provide reasonable notice of any impending disposition and to insure that "every aspect of the disposition" is "commercially reasonable." G.S. 25-9-504(3). A secured party seeking a deficiency judgment under G.S. 25-9-502 (Cum. Supp. 1977) has the burden of establishing compliance with the twin duties of reasonable notification and commercially reasonable disposition. *Accord, Credit Co. v. Concrete Co.*, 31 N.C. App. 450, 229 S.E. 2d 814 (1976), and cases cited therein; Annot., 59 A.L.R. 3d 369 (1974). Placing the burden of persuasion on the secured party tends to insure that the deficien-

cy sought has not been unnecessarily enhanced by abuses of the broad discretion accorded the secured party with respect to the disposition of collateral.

[2] The concept of commercial reasonableness has been notoriously difficult to define and has therefore been unevenly applied by courts and juries. *See generally,* J. White & R. Summers, supra, § 26-11; Comment, 15 Wake Forest L. Rev., 71, 72-79 (1979). To minimize the uncertain results fostered by the flexible standard of commercial reasonableness contained in section 9-504(3), the General Assembly of North Carolina enacted the "Public Sale Procedures" set out in Part 6 of Article 9. *Credit Co. v. Concrete Co.,* supra, 31 N.C. App. at 456; Comment, supra, 15 Wake Forest L. Rev. at 80. Part 6 establishes a conclusive presumption of commercial reasonableness when a secured party gives notice of a disposition of collateral by public sale in substantial compliance with its provisions:

> "Disposition of collateral by public proceedings as permitted by G.S. 25-9-504 may be made in accordance with the provisions of this part. The provisions of this part are not mandatory for disposition by public proceedings, but any disposition of the collateral by public sale wherein the secured party has substantially complied with the procedures provided in this part *shall conclusively be deemed to be commercially reasonable in all aspects.*" (Emphasis added.) G.S. 25-9-601.

The notice requirements for the disposition of collateral by public sale are contained in G.S. 25-9-602, which specifies the contents of the notice of sale, and in G.S. 25-9-603, which prescribes the manner in which notice of sale is to be posted and mailed. Thus, if the secured party who seeks a deficiency judgment can establish that he gave notice of a public sale of collateral in a manner which substantially complies with the procedures of Part 6, he is not required to further establish that the sale was commercially reasonable.

The Court of Appeals reversed JNOV for plaintiff on the ground that plaintiff had failed to establish its compliance with the procedures for mailing of notice prescribed by G.S. 25-9-603 and therefore was not entitled to the conclusive presumption of

Bank v. Burnette

commercial reasonableness. We now examine the soundness of that holding.

G.S. 25-9-603 deals with the posting and mailing of notice of sale and provides in pertinent part as follows:

"(1) In each public sale conducted hereunder, the notice of sale shall be posted on a bulletin board provided for the posting of such legal notices, in the courthouse, in the county in which the sale is to be held, for at least five days immediately preceding the sale.

(2) In addition to the posting of notice required by subsection (1), the secured party or other party holding such public sale shall, at least five days before the date of sale, mail by registered or certified mail a copy of the notice of sale to each debtor obligated under the security agreement:

(a) at the actual address of the debtors, if known to the secured party, or

(b) at the address, if any, furnished the secured party, in writing, by the debtors, or otherwise at the last known address."

Specifically, the Court of Appeals reasoned that on the evidence presented by plaintiff a question of fact existed as to whether plaintiff had sent the notice of the public sale to an "actual address" of defendants. Thus, the precise question is whether plaintiff's evidence establishes as a matter of law that notice of sale was sent to an "actual address" of the debtors.

[3] We first note that G.S. 25-9-603 does not require the secured party to insure that the notice of sale is *actually* received by the debtor. Rather, the secured party is required to "*mail* by registered or certified mail a copy of the notice of sale to each debtor . . . (a) at the actual address of the debtors, if known to the secured party, or (b) at the address, if any, furnished the secured party, in writing, by the debtors, or otherwise at the last known address." G.S. 25-9-603(2) (Emphasis added.) We further note that G.S. 25-1-201(26) reads in pertinent part as follows: "A person 'notifies' or 'gives' a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to

know of it." Additionally, we note that *substantial compliance* is the prescribed standard in determining whether the procedures outlined in G.S. 25-9-603 have been followed. *See* G.S. 25-9-601. Substantial compliance means a compliance which substantially, essentially, in the main, or for the most part, satisfies the procedures. *See* Black's Law Dictionary, p. 1597, defining "substantially" (4th Ed. 1968); *cf. Douglas v. Rhodes,* 188 N.C. 580, 125 S.E. 261 (1924), defining "substantially" under former G.S. 45-25.

[4] Guided by the standard of substantial compliance mandated by G.S. 25-9-601 and by the definition of notice quoted from G.S. 25-1-201(26), we conclude that an "actual address" of a debtor is an address where a notice of sale could reasonably be expected to be received by the addressee in the ordinary course of the mails. Whether an address utilized by a creditor is an "actual address" of a debtor is a determination which must be made on the basis of circumstances known to, or which should have been known to, the creditor at the time the notice of sale was mailed.

[5] Plaintiff's evidence on this question tends to show that the address listed on the promissory note and security agreement executed by defendants on 28 January 1974 was Route 1, Box 271, Spruce Pine, North Carolina. Defendants, however, did not live in Spruce Pine. They actually lived in a home located in Chestnut Grove, which is approximately one and one-half miles from Little Switzerland. On 29 July 1974, letters demanding payment were sent to defendants by certified mail, return receipt requested, addressed to "Route 1, Little Switzerland, North ·Carolina." The return receipt indicates that these demand letters were delivered to defendants three days later on 1 August 1974. The receipt was purportedly signed by the male defendant and reflects that the delivery address was "P. O. Box 121, Little Switzerland, North Carolina." When defendants thereafter failed to make any payment on the promissory note, plaintiff mailed to defendants a notice of sale of the road grading equipment. The notice of sale was dated 24 October 1974 and was sent by certified mail, return receipt requested, to "Route 1, Little Switzerland, North Carolina." The male defendant testified that he had previously received mail at the post office in Little Switzerland, and that he received the demand letters addressed to Route 1, Little Switzerland.

The above evidence so clearly establishes the fact in issue that no reasonable inferences to the contrary may be drawn. Accordingly, we conclude that the evidence establishes as a matter of law that the 24 October 1974 notice of sale was sent to an "actual address" of debtor in substantial compliance with G.S. 25-9-603. The documentary evidence from which plaintiff's witnesses testified establishes that plaintiff has successfully sent certified mail to the Route 1, Little Switzerland address less than three months earlier in connection with the 29 July 1974 demand letters, and those letters had been promptly received and · acknowledged by defendants. Having successfully used the Route 1, Little Switzerland address to communicate with defendants in the recent past, plaintiff could reasonably expect that a certified letter mailed to the same address would reach defendants in the ordinary course.

Defendants do not contradict plaintiff's strong prima facie case nor do they challenge the authenticity or accuracy of the documentary evidence from which plaintiff's witnesses testified. Indeed, male defendant's testimony that he lived one and one-half miles from Little Switzerland *and had received mail there in the past, including the demand letters of 29 July 1974*, tends to confirm the authenticity and accuracy of plaintiff's evidence. The credibility of such evidence is thus manifest as a matter of law.

Having satisfied its burden of establishing substantial compliance as a matter of law with the notice procedures of G.S. 25-9-603, it follows that plaintiff's disposition of the road grading equipment by public sale triggers the conclusive presumption of commercial reasonableness created by G.S. 25-9-601. We hold, therefore, that plaintiff is entitled to JNOV on the question of the commercial reasonableness of plaintiff's disposition by public sale of the road grading equipment.

In concluding that a question of fact remained as to whether plaintiff had sent notice of sale to an "actual address" of debtor, the Court of Appeals relied heavily on the fact that the notice of sale mailed to the Little Switzerland address on 24 October 1974 was not *received* by defendants until 7 November 1974, a full week after the sale of the road grading equipment on 31 October 1974. The court's reliance on this circumstance is misplaced. As previously noted, section 9-603 does not require creditor to insure

that notice of sale is *actually received* by debtor; rather, it requires, in pertinent part, that notice be *mailed* to the actual address of debtor where notice could reasonably be expected to be received by the addressee in the ordinary course of the mails. Thus, the fact that the notice mailed on 24 October did not reach defendants until 7 November is not relevant in determining whether on the date it mailed the letter plaintiff was justified in its belief that Route 1, Little Switzerland was an actual address of debtor where the notice of sale could be expected to be received in the ordinary course of the mails.

The Court of Appeals also relied on the fact that, technically, Route 1, Little Switzerland was a non-existent address. This observation is of no consequence in light of plaintiff's showing that said address was sufficiently accurate to effect normal delivery and prompt acknowledgment of receipt by defendants.

We note parenthetically that on 24 October 1974, the date notice of sale was mailed, defendants were vacationing in Eagle, Colorado. The male defendant testified that prior to their departure defendants knew that the road grading equipment was being repossessed, that a sale of this collateral was imminent, and the place where the sale would be conducted. Before leaving on this trip, defendants did not ask for the sale to be postponed and left no forwarding address. They learned that the sale had taken place immediately upon their return from Colorado on 31 October 1974. Under these circumstances, notice of sale would not have been received by defendants at either the Spruce Pine or Little Switzerland address until defendants returned home.

[6] Defendants next contend that the presumption of commercial reasonableness created by G.S. 25-9-601 denies them the opportunity to contest the reasonableness of a public sale of collateral by a secured party and thereby deprives them of their property without procedural due process in violation of Article I, Section 19 of the North Carolina Constitution and the Fourteenth Amendment to the United States Constitution.

The mandate of procedural due process contained in our Constitution and in the Fourteenth Amendment applies only to actions by the government which deprive individuals of their fundamental rights. *United States v. Cruikshank*, 92 U.S. 542, 554-55, 23 L.Ed. 588 (1876); *In re Trusteeship of Kenan*, 261 N.C. 1, 134

S.E. 2d 85 (1964). This constitutional shield does not protect citizens from the actions or activities of other private individuals. "The requirement of 'State action' can rarely be satisfied when the action is taken by one not a state official." *Oller v. Bank of America*, 342 F. Supp. 21, 23 (N.D. Cal. 1972). The initial inquiry on this point, therefore, is whether the presumption of commercial reasonableness created by G.S. 25-9-601 constitutes "state action" in the constitutional sense.

Defendants do not deny that the actions under scrutiny are those of a private creditor and a private debtor acting under the terms of a private security agreement. Nor do defendants seriously contend that the public sale of the road grading equipment was carried out with the aid of government officials. Rather, defendants purport to find State action solely in the legislative decision to deem commercially reasonable a public sale of collateral in which the secured party substantially complies with the notice procedures outlined in G.S. 25-9-601, *et seq.* According to defendants, the mere enactment of such legislation significantly involves the State in the disposition of collateral by secured parties to the point where the actions of such parties must be considered those of the State.

This contention is unsound and contrary to the weight of authority. *See* Annot., 29 A.L.R. Fed. 418 § 5 (1976). To hold that essentially private conduct is converted into State action simply because it is authorized by statutory law would make virtually all legislative enactments "State action." This is so because "[i]t is difficult to imagine any statutory provision that does not, in some way, control human relationships." *Oller v. Bank of America, supra.* To say that all human behavior which conforms to statutory requirements is "State action" would far exceed not only what the framers of the State and Federal Constitutions ever intended but common sense as well. *Id.* Since we hold that the enactment of G.S. 25-9-601 does not constitute "State action," it becomes unnecessary to discuss whether defendants were deprived of their property without procedural due process.

The result we reach requires us to consider whether verdict may be directed for the party with the burden of proof and, similarly, whether the trial court may grant a JNOV for the party

with the burden of proof. For the reasons which follow, we conclude that it may, in appropriate circumstances, do so.

Rule 50, Rules of Civil Procedure, contemplates that *any* party may move for a directed verdict at the close of all the evidence. *See* Official Comment, G.S. 1A-1, Rule 50. When such motion is made by any party and denied, or for any reason not granted, and the jury returns a verdict for the non-movant, the movant may make a motion for judgment notwithstanding the verdict. *Dickinson v. Pake*, 284 N.C. 576, 201 S.E. 2d 897 (1974). The motion for JNOV in effect requests "that judgment be entered in accordance with the movant's earlier motion for directed verdict, notwithstanding the contrary verdict actually returned by the jury." *Summey v. Cauthen*, 283 N.C. 640, 197 S.E. 2d 549 (1973). The rule itself provides that the motion for JNOV, made under the outlined circumstances, "shall be granted if it appears that the motion for directed verdict could properly have been granted." Rule 50(b)(1), Rules of Civil Procedure. It follows, therefore, that "[t]he propriety of granting a motion for judgment notwithstanding verdict is determined by the same considerations as that of a motion for directed verdict. . . ." Sizemore, General Scope and Philosophy of the New Rules, 5 Wake Forest L. Rev. 1, 41 (1969).

Turning now to the case before us, plaintiff has the burden of establishing substantial compliance with the notice procedures outlined in G.S. 25-9-601 *et seq.* Its motion for JNOV brings into focus the propriety of directing a verdict for the party with the burden of proof. We first note that such directed verdicts are rarely granted. *See, e.g., Service Auto Supply Co. of P.R. v. Harte & Co.*, 533 F. 2d 23 (1st Cir. 1976). This is so because, even though proponent succeeds in the difficult task of establishing a clear and uncontradicted prima facie case, there will ordinarily remain in issue the credibility of the evidence adduced by proponent. *See* 2 McIntosh, N.C. Practice and Procedure, § 1488.20 at 25-26 (Phillips Supp. 1970). Nonetheless, this Court has recognized that there may be situations where credibility is manifest as a matter of law. *See Kidd v. Early*, 289 N.C. 343, 222 S.E. 2d 392 (1976). In such situations it is proper to direct verdict for the party with the burden of proof if the evidence so clearly establishes the fact in issue that no reasonable inferences to the contrary can be drawn. *See generally, Fireman's Fund Ins. Co. v.*

*Videfreeze Corp.*, 540 F. 2d 1171 (3d Cir. 1976), *cert. denied,* 429 U.S. 1053 (1977); *Grey v. First Nat. Bank in Dallas,* 393 F. 2d 371 (5th Cir.), *cert. denied,* 393 U.S. 961 (1968); *United States v. Grannis,* 172 F. 2d 507 (4th Cir.), *cert. denied,* 337 U.S. 918 (1949); 9 Wright & Miller, Federal Practice and Procedure, § 2535 (1971); Comment, Directing Verdict for the Party with the Burden of Proof, 50 N.C. L. Rev. 843 (1972).

[7] It should be stressed that there are neither constitutional nor procedural impediments to directing a verdict for the party with the burden of proof where *the credibility of movant's evidence is manifest as a matter of law.* The constitutional right to trial by jury, N.C. Const., Art. I, § 25, is not absolute; rather, it is premised upon a preliminary determination by the trial judge that there indeed exist genuine issues of fact and credibility which require submission to the jury. *See Kidd v. Early, supra; McQueen v. Bank,* 111 N.C. 509, 16 S.E. 270 (1892). Similarly, Rule 51(a), which prohibits the trial judge in his charge from expressing an opinion as to whether a fact is fully or sufficiently proven, becomes applicable only after a preliminary determination by the trial judge that issues of fact and credibility exist for the jury. 2 McIntosh, supra, § 1488.20 at 25 (Phillips Supp. 1970).

Whether credibility is established as a matter of law depends on the evidence in each case. Accordingly, it would be futile to attempt to state a general rule which would determine whether credibility is manifest in a particular case. Nonetheless, review of the modern cases indicates three recurrent situations where credibility is manifest:

(1) Where non-movant establishes proponent's case by admitting the truth of the basic facts upon which the claim of proponent rests. *Flintall v. Insurance Co.,* 259 N.C. 666, 131 S.E. 2d 312 (1963); *Davis v. Vaughn,* 243 N.C. 486, 91 S.E. 2d 165 (1956).

(2) Where the controlling evidence is documentary and non-movant does not deny the authenticity or correctness of the documents. *Watkins Products, Inc. v. Keane,* 185 Neb. 424, 176 N.W. 2d 230 (1970); *Commerce Trust Co. v. Howard,* 429 S.W. 2d 702 (Mo. 1968); 2 McIntosh, supra, 1488.20 at 26 (Phillips Supp. 1970).

(3) Where there are only latent doubts as to the credibility of oral testimony and the opposing party has "failed to point to

specific areas of impeachment and contradictions." *Kidd v. Early, supra,* 289 N.C. at 370. *See also,* Comment, supra, 50 N.C. L. Rev. at 844-46 (1972).

In summary, while credibility is generally for the jury, courts set the outer limits of it by preliminarily determining whether the jury is at liberty to disbelieve the evidence presented by movant. *See generally,* 9 Wright & Miller, Federal Practice and Procedure, § 2535 (1971); James, Sufficiency of the Evidence and Jury-Control Devices Available Before Verdict, 47 Va. L. Rev. 218, 226-27 (1961). Needless to say, the instances where credibility is manifest will be rare, and courts should exercise restraint in removing the issue of credibility from the jury. *Kidd v. Early, supra.*

*Cutts v. Casey,* 278 N.C. 390, 180 S.E. 2d 297 (1971), does not control decision here. That case involved a motion for a directed verdict upon conflicting evidence on a strenuously contested issue of fact. Thus, credibility was obviously not manifest as a matter of law and neither a directed verdict nor a motion for summary judgment would have been appropriate. Any language to the contrary in *Cutts* was not necessary to a decision of the case.

[8]     The record in this case reveals that plaintiff's evidence is manifestly credible and establishes as a matter of law that plaintiff mailed notice of sale to an "actual address" of the debtors in substantial compliance with G.S. 25-9-603. Accordingly, JNOV for plaintiff on the question of commercial reasonableness was properly granted.

The jury having found that defendants are indebted to plaintiff, after lawful sale of the collateral and proper credit for the proceeds thereof, in the amount of $89,008.23, it follows that plaintiff is entitled to judgment on the verdict for said amount. Furthermore, the jury having determined that plaintiff had *not* disposed of any of defendants' property not pledged as collateral in the security agreement, and the trial court's JNOV for defendants on that question having been reversed by the Court of Appeals and the reversal not preserved for further review in this Court, defendants have no set-off in any amount as a credit against the deficiency.

For the reasons stated the cause is remanded to the Court of Appeals for further remand to the Superior Court of Mitchell

County for entry of judgment on the verdict in favor of plaintiff in the sum of $89,008.23 with costs.

Reversed and remanded.

Justices COPELAND and BROCK did not participate in the consideration or decision of this case.