ELIZABETH KAY McLEAN v. DR. PAUL SALE

No. 8130SC271

(Filed 17 November 1981)

1. **Insane Persons § 1— involuntary commitment—physician's certificate—duty to perform examination**

Under G.S. 122-58.4, defendant physician had a positive duty to examine plaintiff before he signed a Qualified Physician Examination and Evaluation certificate for the involuntary commitment of plaintiff to a mental health care facility, and a cause of action arose against defendant if plaintiff was involuntarily committed as a result of defendant's actions regardless of what may have prompted defendant to fail to make the examination of plaintiff. Therefore, in an action to recover damages for plaintiff's wrongful commitment pursuant to a certificate allegedly signed by defendant without an examination of plaintiff, the trial court erred in instructing the jury that plaintiff must prove that the failure of defendant to examine plaintiff was wrongful in that it was willful, intentional and without reasonable or just cause.

2. **Insane Persons § 1— involuntary commitment—examination by qualified physician**

The examination by a qualified physician required by G.S. 122-58.4 in involuntary commitment proceedings requires that the person to be examined be physically in the presence of the qualified physician so that the physician may actually utilize his five senses, or such of them as he deems necessary, in carrying out the mandate of the statute. However, the physician may use additional information in determining the condition of the person being examined, such as the history of the person as told to the physician or previously recorded, medical records of the person, or prior judicial records of commitment proceedings.

3. **Damages § 11.2; Insane Persons § 1— involuntary commitment—physician's wrongful signing of Examination and Evaluation certificate—punitive damages**

Plaintiff was not entitled to punitive damages for defendant physician's wrongful signing of an Examination and Evaluation certificate for the commitment of plaintiff to a mental hospital without examining plaintiff as required by statute where there was no evidence that defendant acted maliciously or willfully or with wantonness or reckless disregard for the consequences.

APPEAL by plaintiff from *Ferrell, Judge.* Judgment entered 15 October 1980 in Superior Court, SWAIN County. Heard in the Court of Appeals 20 October 1981.

In this action plaintiff seeks compensatory and punitive damages from defendant. She alleges defendant wrongfully caused her to be involuntarily admitted and confined in Broughton Hospital by signing and executing a Qualified Physician Examination and Evaluation certificate without first examining plaintiff as required by N.C.G.S. 122-58.4.

Plaintiff produced evidence tending to show that on 3 December 1976 she was attending school at Swain County High School. She drove a school bus, with eighty-eight children as passengers, to school on that day. Although she had known and been treated by the defendant doctor before this date, on 3 December 1976 she did not see him, nor was she in his presence or in sight or view of him. Dr. Sale did not speak to her on that date. Dr. Sale did not examine her on 3 December 1976. Nevertheless, based on defendant's written authorization, plaintiff was placed in a police car about 1:00 p.m. and taken to Broughton Hospital in Morganton, North Carolina, where she was kept in a locked ward until the next Tuesday at 10:00 a.m. She was released from confinement at that time. Plaintiff further testified concerning the effect of the hospitalization upon her health. She immediately lost her job as a school bus driver. In February 1978 it was necessary for her to receive psychiatric treatment from Dr. Bill Griffin. She also suffered from public embarrassment and moved to Macon County.

Plaintiff offered into evidence the following documents: Petition for Involuntary Commitment, The Custody Order for Involuntary Commitment, and the Qualified Physician Examination and Evaluation certificate. E. J. McLean, plaintiff's father, testified that after the hospitalization he confronted defendant. Defendant admitted that he signed the papers. Mr. McLean asked, "Did you examine her?" Defendant replied, "No, I did not. I didn't see her. I took them at their word."

Defendant produced evidence tending to show that he was a medical doctor, practicing general medicine in Bryson City, North Carolina. He is not a psychiatrist. He had been licensed to practice in North Carolina for seven years. He had known plaintiff for about five years and had treated her for headaches and "for an

evaluation of some changes in her monthly periods." Later he saw her for an infected cyst in her low back. The defendant also knew Tom Williams, who worked as a school psychologist with the Swain County school system. Apparently Williams met with defendant in his office on 3 December 1976, where he told defendant that he thought plaintiff was depressed and a danger to herself. Dr. Sale testified that based on what Williams told him and his knowledge of "the person as a patient," it was his opinion that "there was a significant danger to this person's life at the time" and that "she needed to have attention which would protect her." Dr. Sale testified, "I did not meet personally on that date with Kay McLean." He had not seen her since the latter part of 1975, when he treated her for the cyst. Defendant further admitted that he signed the Qualified Physician Examination and Evaluation certificate. He also admitted that he signed the certificate without ever seeing plaintiff, and that "[s]uch action as I took I relied upon what Williams told me and part of what Williams told me was something somebody else told him."

The court directed a verdict against plaintiff on the issue of punitive damages, and the jury answered the following issue: "1. Did the defendant, Dr. Paul Sale, wrongfully cause the plaintiff, Elizabeth Kay McLean, to be admitted and confined to Broughton Hospital on December 3, 1976? ANSWER: *No.*"

Plaintiff moved to set the verdict aside, which was denied, and appealed from the judgment denying plaintiff any recovery.

*Roberts, Cogburn and Williams, by Max O. Cogburn, for plaintiff appellant.*

*Morris, Golding, Blue and Phillips, by William C. Morris, Jr., for defendant appellee.*

MARTIN (Harry C.), Judge.

Plaintiff submits that the trial court erred in its instructions to the jury. We agree. The court instructed the jury[1] that:

> An examination may take many forms. And various methods may be employed to examine a person. Such

---

1. Plaintiff did not except to all of the quoted portions of the charge, but it is necessary that other parts be included in considering the assignments of error.

methods may include an investigation into the background of a person, references to available information about such person; and inquiry of others familiar with such person and with the acts, occurrences and events which resulted in the issuance of an order for the examination.

Such examination also may include consultation with others who may have counseled with such person. And a research into medical histories available about such person. The law requires at least a personal examination, however cursory or brief, shall be conducted by the examining qualified physician prior to a finding by such physician that such person was mentally ill or an inebriate and imminently dangerous to himself or others.

If a physician charged with the duty of examining a person presented to him fails to, at least, personally examine such person, he has not then complied with the provisions of the law.

However, in order to recover for the breach of failure to perform this duty, the Plaintiff is required to prove from the evidence and by its greater weight that such failure was wrongful in the sense that it was intentional and willful, without reasonable or just cause. In determining whether such failure of the physician to personally examine an individual presented for examination was intentional and willful, you may consider all the facts and circumstances you find to have existed at the time in question, of which the Defendant had knowledge; the means by which he learned such information; the reasonableness of his conduct and the circumstances; the nature and extent of any investigation he may have conducted; the motive, if any, he may have had in executing a commitment document; and any other relevant fact arising upon the evidence.

If you find that the Defendant intentionally failed to personally examine the Plaintiff, and that such was willful and without reasonable or just cause, then the Defendant would have breached the duty he owed the Plaintiff; otherwise, not.

So then, Members of the Jury, as to this first issue, I instruct you that if you find from the evidence and by its

greater weight, the burden being upon the Plaintiff to so satisfy you, that on December 3, 1976, the Defendant, Dr. Paul Sale, executed a commitment document which resulted in the Plaintiff being confined and admitted to Broughton Hospital. And that when he did so, he intentionally; that is, willfully and without reasonable or just cause, failed to personally examine the Plaintiff prior to executing such document. Then it would be your duty to answer this first issue yes in favor of the Plaintiff.

[1]   Under N.C.G.S. 122-58.4, the defendant had a positive duty to examine plaintiff before he signed the Qualified Physician Examination and Evaluation certificate. *McLean v. Sale*, 38 N.C. App. 520, 248 S.E. 2d 372 (1978), *disc. rev. denied*, 296 N.C. 585 (1979). Defendant's failure to perform the examination is a violation of the statute, and if plaintiff was involuntarily committed as a result of defendant's actions, a cause of action arises against defendant. This is true regardless of what may have prompted defendant to fail to make the examination of plaintiff. The trial court instructed the jury that plaintiff must prove that the failure of defendant to examine plaintiff as required by the statute was wrongful, in that it was willful, intentional and without reasonable or just cause. This was error. The reasons defendant failed to make the required examination were competent on the question of punitive damages, but not on the issue of whether defendant violated his statutory duty to plaintiff.

The court's instructions on what constitutes an examination within the meaning of the statute were conflicting, confusing and erroneous. The words *examine* and *examination* are not defined in the statute. *Examination* means: "The act or process of inspection of the body and its systems to determine the presence or absence of disease." Taber's Cyclopedic Medical Dictionary 509 (14th ed. 1981). *Examination* means observation or inspection. J. Rodale, The Synonym Finder 373 (1967). *Examine* means to "inspect visually or by the use of other senses . . . to inspect or test for evidence of disease or abnormality." Webster's Third New International Dictionary 790 (1971).

[2]   We hold that *examine* as used in the statute requires that the person to be examined be physically in the presence of the qualified physician, so that the physician may actually utilize his

five senses, or such of them as he deems necessary, in carrying out the mandate of the statute. Of course the physician may use additional information in determining the condition of the person being examined. Such information could include, but is not limited to, the history of the person as told to the physician or previously recorded, medical records of the person, or prior judicial records of commitment proceedings.

Our holding is supported by the statute itself, as well as common sense and good medical practice. The statute requires that a law enforcement officer "shall take the respondent to a community mental health center for an examination by a qualified physician . . . ." N.C. Gen. Stat. § 122-58.4(a). "The qualified physician shall examine the respondent as soon as possible, and in any event within 24 hours, after the respondent is presented for examination." N.C. Gen. Stat. § 122-58.4(c). The law enforcement officer must take and present the person to be examined to the physician for this purpose. This certainly requires that the person must be physically present before the physician for the purpose of the examination. To hold otherwise would increase the possibility that persons who are not mentally ill or inebriates and dangerous to themselves or others would be involuntarily committed. N.C. Gen. Stat. § 122-58.1. The policy of this state, as manifested by the statute, is to prevent such occurrences. *McLean v. Sale, supra.* Defendant's argument that the evidence in this case would support a finding that he examined plaintiff within the meaning of the statute is rejected. All the evidence shows that he did not examine plaintiff as required by the statute.

On the record before us, plaintiff was entitled to a directed verdict on the first issue. The evidence does not disclose any genuine issue of material fact. Plaintiff's right to recover does not depend upon the credibility of her witnesses. Her case is established by the documents in evidence and the admissions of defendant. The doctrine of *Cutts v. Casey,* 278 N.C. 390, 180 S.E. 2d 297 (1971), is, therefore, not applicable. A directed verdict may be granted for the party having the burden of proof if his right to judgment is established by the non-movant's evidence. *Bank v. Burnette,* 297 N.C. 524, 256 S.E. 2d 388 (1979); *Alligood v. Railroad,* 21 N.C. App. 419, 204 S.E. 2d 706 (1974); *Price v. Conley,* 21 N.C. App. 326, 204 S.E. 2d 178 (1974); N.C. Civ. Prac. & Proc.

§ 50-6 (2d ed. 1981). Defendant admits that he did not have plaintiff in his presence for the purpose of an examination. He "took them at their word." Defendant admits that plaintiff was committed to Broughton Hospital following his signing of the certificate. Once the defendant signed the certificate, the officer was required to take plaintiff to the hospital. N.C. Gen. Stat. § 122-58.4(c); *McLean v. Sale, supra.* By signing the certificate without examining plaintiff as required by the statute, defendant wrongfully caused her to be admitted and confined in Broughton Hospital.

[3] Plaintiff further contends that the court erred in dismissing the claim for punitive damages. We reject this contention. There is no evidence that defendant acted maliciously or willfully or with wantonness or reckless disregard for the consequences. *Hinson v. Dawson*, 244 N.C. 23, 92 S.E. 2d 393 (1956). Plaintiff does not allege defendant acted with malice. Plaintiff asks us to extend the basis for an issue of punitive damages, relying upon *DiGiovanni v. Pessel*, 104 N.J. Super. 550, 250 A. 2d 756 (1969). The New Jersey court allowed an issue of punitive damages solely on the basis that defendant failed to make a required statutory examination. This decision by the Superior Court, Appellate Division, was reversed by the Supreme Court of New Jersey. *Di Giovanni v. Pessel*, 55 N.J. 188, 260 A. 2d 510 (1970). We are mindful of our Court's statement in *Hinson v. Dawson, supra:* "[W]e are not disposed to expand the doctrine [of punitive damages] beyond the limits established by authoritative decisions of this Court." 244 N.C. at 27, 92 S.E. 2d at 396.

Plaintiff also assigns as error the admission of certain testimony, principally what Williams said to defendant and what Linda Dills told Williams. In the light of our opinion today, these matters are not likely to reoccur at a new trial, and we, therefore, refrain from discussing them.

New trial.

Judges HEDRICK and CLARK concur.