McGEE, Chief Judge.
This case arises out of a collision that occurred on 9 September 2016 around 12:30 p.m. in Wake Forest, North Carolina. Ricky Lee Chalk ("Plaintiff") turned his Harley Davidson motorcycle southward down Wake Drive - a wide, unmarked, two-lane road with a Mellow Mushroom pizza restaurant on the left. Giuliana Braakman ("Defendant") was in her Toyota facing south on Wake Drive and turned left toward the Mellow Mushroom parking lot. As Plaintiff approached Defendant's car, he "laid down" his motorcycle and collided with the driver's side of Defendant's car.
At trial, Plaintiff testified Defendant was stopped on the side of Wake Drive with her wheels turned left and that she pulled in front of him without using a turn signal. Defendant testified she was driving in the southbound lane, slowed, and had started turning left into the Mellow Mushroom parking lot after using her signal when Plaintiff attempted to pass her on the left, colliding with her.
Plaintiff made a motion for a directed verdict during trial sometime on 11 or 12 September 2017. The trial court denied Plaintiff's motion. The jury returned a verdict answering "No" to the question: "Was the Plaintiff ... injured and/or damaged by the negligence of the Defendant ...?" Plaintiff filed a motion on 22 September 2017, requesting "pursuant to Rules 50, 59 and 60 of the North Carolina Rules of Civil Procedure for Judgment Notwithstanding the Verdict and a new trial." In support of his motion, Plaintiff argued "there was a manifest disregard by the jury of the instructions of the [trial] court[,]" "the [v]erdict is contrary to the greater weight of the evidence and, in fact, all of the competent evidence[,]" and "the said [v]erdict is clearly inappropriate and therefore the same should be set aside." Based upon the foregoing allegations, Plaintiff requested the trial court grant "a new trial on all of the issues."
Plaintiff's motion for judgment notwithstanding the verdict ("JNOV") and for a new trial was also denied.[1] Plaintiff contends on appeal that "[t]he physical evidence and all the competent and credible evidence demonstrate that [ ] [P]laintiff's version of the story is correct and that he was, in fact, injured and damaged by the negligence of [ ] [D]efendant."
Analysis
Plaintiff argues on appeal that (1) the trial court erred in denying his motion for a directed verdict at trial; (2) the trial court erred in denying his motion for JNOV; and (3) the trial court erred in denying his motion for a new trial.
I.
First, Plaintiff contends the trial court erred in denying his motion for directed verdict. We hold Plaintiff's assignment of error is not preserved.
Under Rule 50(a), a party may move for directed verdict at the close of evidence offered by an opponent or at the close of all the evidence provided the motion "state[s] the specific grounds therefor." N.C. Gen. Stat. § 1A-1, Rule 50(a) (2017). Our Courts have long held "this provision is mandatory." Feibus & Co. v. Construction Co. , 301 N.C. 294, 298, 271 S.E.2d 385, 388 (1980) (citation omitted). "The purpose of the rule is to apprise the Court and the adverse parties of movant's grounds for the motion." Id. at 299, 271 S.E.2d at 389 (citation and quotation omitted). In Feibus & Company , the Supreme Court explained the rationale for this rule as follows:
"If movant states the specific grounds of the motion, plaintiff may be able to meet the defect with proof, and his case would be complete. If movant was not required to state the specific ground, the defect might be the cause of a later judgment notwithstanding the verdict when it is too late for plaintiff to supply the proof. Failure to state specific grounds for the motion is sufficient reason to deny the motion."
Id. at 299, 271 S.E.2d at 389 (quoting Sizemore, General Philosophy and Scope of the New Rules , 5 W.F.L. REV. 1, 37 (1969) ). The Feibus court then held the defendant's arguments, which were oral and not written and which did not specifically assert insufficiency of the evidence, failed to "g[i]ve the trial court and plaintiff adequate notice that it challenged the sufficiency of the evidence." Id. at 299, 271 S.E.2d at 389. As this Court has previously held, "[u]pon failure to state specific grounds, an appellant cannot question on appeal the insufficiency of the evidence to support the verdict." Love v. Pressley , 34 N.C. App. 503, 511, 239 S.E.2d 574, 580 (1977), disc. review denied , 294 N.C. 441, 241 S.E.2d 843 (1978) (citing Wheeler v. Denton , 9 N.C. App. 167, 175 S.E.2d 769 (1970) ).
During trial, Plaintiff's counsel stated the following to the trial court: "I got -- for the record, Plaintiff makes a motion for directed verdict." The trial court denied the motion. Plaintiff did not submit any written grounds for his motion and his oral motion for directed verdict did not include any grounds or argument in support. Because Plaintiff's motion included no specific grounds, we hold it did not satisfy Rule 50(a) and Plaintiff cannot now appeal as to the insufficiency of the evidence to support the jury's verdict.[2]
Even assuming, arguendo , that Plaintiff's motion satisfied Rule 50(a), his arguments still fail. Plaintiff argues "the trial court erred in its denial of [his] motion for directed verdict on the issue of [ ] Defendant's negligence." We disagree.
The standard of review of the denial of a motion for a directed verdict and of the denial of a motion for JNOV are identical. We must determine " 'whether, upon examination of all the evidence in the light most favorable to the non-moving party, and that party being given the benefit of every reasonable inference drawn therefrom and resolving all conflicts of any evidence in favor of the non-movant, the evidence is sufficient to be submitted to the jury.' " A motion for either a directed verdict or JNOV " 'should be denied if there is more than a scintilla of evidence supporting each element of the non-movant's claim.' "
Shelton v. Steelcase, Inc. , 197 N.C. App. 404, 410, 677 S.E.2d 485, 491 (2009) (citations omitted).
Plaintiff bears a heavy burden in this case, as "[a] directed verdict is rarely appropriate in a negligence action because application of the reasonably prudent person standard is usually for the jury." Jones v. GMRI, Inc. , 144 N.C. App. 558, 566, 551 S.E.2d 867, 873 (2001), cert. dismissed as improvidently granted , 355 N.C. 275, 559 S.E.2d 787 (2002) (citation omitted). "When more than one interpretation of the facts is possible, the issues of negligence ... are matters to be decided by a jury." Stallings v. Food Lion, Inc. , 141 N.C. App. 135, 138, 539 S.E.2d 331, 333 (2000). Moreover, "[d]irected verdicts for the party with the burden of proof are rarely granted." O'Carroll v. Texasgulf, Inc. , 132 N.C. App. 307, 313, 511 S.E.2d 313, 319 (1999) (citing Bank v. Burnette , 297 N.C. 524, 536, 256 S.E.2d 388, 395 (1979) ). "This is so because, even though proponent succeeds in the difficult task of establishing a clear and uncontradicted prima facie case, there will ordinarily remain in issue the credibility of the evidence adduced by proponent." Id.
In Cutts v. Casey , our Supreme Court observed that "[a]s a consequence of our constitutional and statutory provisions this Court has consistently held that the judge cannot direct a verdict upon any controverted issue in favor of the party having the burden of proof 'even though the evidence is uncontradicted.' " 278 N.C. 390, 417-18, 180 S.E.2d 297, 311 (1971) (citations omitted). However, the Court then noted that "[t]here may be ... 'a few situations in which the acceptance of credibility as a matter of law seems compelled[,]' " and "[the Court] will endeavor to recognize that situation when it confronts us." Id. at 421, 180 S.E.2d at 314 (internal citations and quotations omitted). In Bank v. Burnette , our Supreme Court clarified that there are "three recurrent situations" where a directed verdict may be entered for the party with the burden of proof because "the credibility of movant's evidence is manifest as a matter of law ":
(1) Where non-movant establishes proponent's case by admitting the truth of the basic facts upon which the claim of proponent rests.
(2) Where the controlling evidence is documentary and non-movant does not deny the authenticity or correctness of the documents.
(3) Where there are only latent doubts as to the credibility of oral testimony and the opposing party has "failed to point to specific areas of impeachment and contradictions."
297 N.C. at 537-38, 256 S.E.2d at 396 (internal citations omitted).[3]
In the present case, Plaintiff cannot meet this heavy burden. First, Defendant does not "admit[ ] the truth of the basic facts" of Plaintiff's claim, including the existence of Defendant's negligence, Defendant's location prior to turning, whether Defendant used a turn signal, and the absence of contributory negligence. Id. at 537, 256 S.E.2d at 396 (citation omitted). To the contrary, Defendant contests all of these assertions. Second, the controlling evidence in this case is not documentary, as the question of Defendant's negligence here depends on the circumstances. Therefore, the testimony of Plaintiff, Defendant, and the other witnesses is also relevant. Finally, the contrasting accounts of Plaintiff, Defendant, and their witnesses create questions that are more than mere "latent doubts" about credibility - they involve "conflicting evidence on a strenuously contested issue of fact." Burnette , 297 N.C. at 538, 256 S.E.2d at 396. Credibility in such cases is "obviously not manifest as a matter of law" and must be left to the jury to resolve. Id. We will consider the testimony of the witnesses in turn.
First, Plaintiff testified that he turned left into the southbound lane on Wake Drive, that he saw Defendant slowly driving down Wake Drive and then merging to the right side of the road with her brake lights on, and that she then turned into the lane just in front of him without using a turn signal, which resulted in his motorcycle colliding with her car. On cross-examination, Defendant's counsel attempted to impeach Plaintiff by calling attention to Plaintiff's response to interrogatories and deposition testimony in which he stated that when he first saw Defendant, she was already stopped on the side of Wake Drive. Indeed, Plaintiff conceded that he contradicted his previous testimony. Thus, Defendant "point[ed] to specific areas of impeachment and contradictions." See Burnette , 297 N.C. at 537-38, 256 S.E.2d at 396.
Next, Plaintiff's witness, Joshua Bass ("Mr. Bass"), testified he saw Defendant driving down Wake Drive, saw her slow down around the Mellow Mushroom, where she "got over on the right side of the road[.]" Mr. Bass further testified that when "she went to make her left turn," the collision occurred. He also claimed he did not see Defendant use a turn signal. On cross-examination, Mr. Bass admitted that "[he did]n't know" "one way or the other" whether Defendant used her turn signal.
Defendant's witness, Officer Brandon Grady Cribb ("Officer Cribb"), also testified and contradicted the testimony of Plaintiff concerning the position of Defendant's car. According to Officer Cribb's testimony, Wake Drive was an unmarked road with no center line that was wider than a regular two-lane road from the intersection with Main Street until a point past the scene of the accident. In response to a question from defense counsel, Officer Cribb agreed that Wake Drive was "subject to a[n imaginary] middle dividing line ... a vehicle going either direction on Wake Road has the right to use any portion or all of the lane."
In his brief, Plaintiff states "[Officer Cribb] observed the vehicles and that the impact occurred in the southbound travel lane of Wake Drive." While Officer Cribb did agree with Plaintiff that "the accident occur[red] in the right-hand [southbound] travel lane of Wake Drive[,]" he also testified "the front tires [of Defendant's vehicle] [were] in the northbound" "lane" of Wake Drive, contradicting Plaintiff's contention that Defendant's car was in the southbound lane.
Finally, Defendant testified and contradicted the testimony of Plaintiff and Mr. Bass. Defendant testified she was going to Mellow Mushroom and that she "slowed down, turned [on her] blinker, looked at [her] mirrors, and then looked ahead to see if there was anyone around, and then made [her] turn into the [Mellow Mushroom] parking lot[,]" at which point Plaintiff collided with the driver's side of her car. Defendant also testified she was going "very slow, like five miles [per hour,]" a point corroborated by Officer Cribb. The testimony of Defendant contradicts the accounts of Plaintiff and Mr. Bass on the speed at which Defendant was going, whether she pulled over to the right, and whether she used her turn signal, which all create issues of credibility on facts central to the question of whether Defendant's negligence caused Plaintiff's injuries. This "conflicting evidence on [ ] strenuously contested issue[s] of fact" means the credibility of Plaintiff's testimony was "obviously not manifest as a matter of law" and these issues were properly committed to the jury. Burnette , 297 N.C. at 538, 256 S.E.2d at 396.
Plaintiff asserts several theories as to why "all the competent and credible evidence demonstrate that [his] version of the story is correct[.]" First, Plaintiff contends that "[i]f [ ] [D]efendant's testimony were true, the impact would have had to ... occurred in the northbound lane of travel." Plaintiff's arguments on appeal are contingent on his assertion that all the credible evidence demonstrates the collision occurred in the southbound lane of Wake Drive, and that if the collision occurred in the southbound lane, then his account of the events must be entirely true, and the trial court should have granted his motion for directed verdict. But the lane in which the collision occurred is one of the very factual issues disputed by the witnesses and the parties. And, even if the accident did occur entirely in the southbound lane, the jury could still have determined that Defendant was not negligent or that Plaintiff was contributorily negligent.
Plaintiff also contends the photographic evidence showed "that, after the collision, [ ] [D]efendant's vehicle came to rest in a position perpendicular to the direction of Wake Drive[,]" and that it was "impossible" for her vehicle to have reached that position if she were in the southbound lane rather than on the side. This assertion is incorrect. It is not the duty of this Court to estimate the angle of a vehicle with respect to the road based upon photographic evidence, but our review of the evidence shows Defendant's car is not "perpendicular to the direction of Wake Drive[,]" or even nearly so. At any rate, "it is possible to derive conflicting inferences from" the photographic evidence, and that question is, therefore, for the jury. Cutts , 278 N.C. at 421, 180 S.E.2d at 313.
In the present case, Defendant did not "admit[ ] the truth of the basic facts" of Plaintiff's case. Burnette , 297 N.C. at 537, 256 S.E.2d at 396. There were not only "latent doubts as to the credibility of [Plaintiff's] oral testimony"; rather, Defendant "point[ed] to specific areas of impeachment and contradictions." Id. at 537-38, 256 S.E.2d at 396 (citation omitted). Finally, the evidence did not conclusively establish the collision occurred in the southbound lane or that Defendant was stopped to the side of the southbound lane prior to the collision. Even if it did, the photographic evidence is not "controlling" on the question of Defendant's negligence, and it does not mean that Plaintiff's testimony is manifestly credible. Id. "[U]pon examination of all the evidence in the light most favorable to [Defendant], and [Defendant] being given the benefit of every reasonable inference drawn therefrom and resolving all conflicts of any evidence in favor of [Defendant], the evidence [wa]s sufficient to be submitted to the jury." Shelton , 197 N.C. App. at 410, 677 S.E.2d at 491 (citation and internal quotations omitted). Because credibility is not manifest as a matter of law and there is "more than a scintilla of evidence" in support of the verdict in Defendant's favor, we would hold the trial court did not err in denying Plaintiff's motion for directed verdict. Id.
II.
Plaintiff next contends the trial court erred in denying his motion for JNOV. "The motion for [JNOV] is technically only a renewal of the motion for a directed verdict made at the close of all the evidence, and thus the movant cannot assert grounds not included in the motion for directed verdict." Love , 34 N.C. App. at 511, 239 S.E.2d at 580 (citations omitted). Therefore, since Plaintiff failed to state specific grounds for his original motion for directed verdict, Plaintiff also failed to preserve his argument as to sufficiency of the evidence in his motion for JNOV. See Jones , 144 N.C. App. at 564, 551 S.E.2d at 871 (holding that plaintiff failed to preserve assignment of error as to trial court's denial of JNOV motion where plaintiff failed to specify ground in directed verdict motion).
Even if Plaintiff did preserve his assignment of error to the trial court's denial of his motion for JNOV, we would affirm. "The same standard is to be applied by the courts in ruling on a motion for JNOV as is applied in ruling on a motion for a directed verdict." Smith v. Price , 315 N.C. 523, 527, 340 S.E.2d 408, 411 (1986) (citations omitted). Therefore, we would affirm for the reasons set forth above regarding Plaintiff's motion for directed verdict.
III.
Finally, Plaintiff argues the trial court erred in denying his motion for a new trial. We disagree.
Rule 59 allows the trial court to grant a motion for a new trial based upon "[i]nsufficiency of the evidence to justify the verdict[.]" N.C.G.S. § 1A-1, Rule 59(a)(7). The relevant law is summarized as follows by our Supreme Court:
"[A] motion for a new trial for insufficiency of the evidence pursuant to Rule 59(a)(7) is addressed to the discretion of the trial court." Accordingly, "in the absence of an abuse of discretion, a trial court's ruling on a motion for a new trial due to the insufficiency of evidence is not reversible on appeal."
We have explained that in the Rule 59(a)(7) context, the phrase " 'insufficiency of the evidence' means that the verdict 'was against the greater weight of the evidence.' " Therefore, "[t]he trial court has discretionary authority to appraise the evidence and to 'order a new trial whenever in [its] opinion the verdict is contrary to the greater weight of the credible testimony.' " Finally, in applying the abuse of discretion standard, "[a]n appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice."
Justus v. Rosner , --- N.C. ----, ----, 821 S.E.2d 765, 769-70 (2018) (emphasis removed) (citations omitted). We hold, based on the record before us, Plaintiff cannot show the trial court abused its discretion by denying his motion for a new trial. The determination the jury made on the fact-intensive question of negligence was reasonable and does not amount to a "substantial miscarriage of justice." Id. The trial court determined the verdict was not against the greater weight of the evidence, and, based on the cold record before us, which reveals disputes of fact and questions of credibility, we find no reason to disturb that finding on appeal.
Conclusion
In this case, Plaintiff asserted that the trial court erred in: (1) denying his motion for directed verdict; (2) denying his motion for JNOV; and (3) denying his motion for a new trial. We hold that Plaintiff failed to preserve his assignments of error with respect to the motions for directed verdict and JNOV. The trial court did not err in denying Plaintiff's motion for a new trial. We affirm the 13 September 2017 judgment and the 23 February 2018 order of the trial court.
AFFIRMED.
Report per Rule 30(e).
Judges HUNTER, Jr. and HAMPSON concur.

Plaintiff did not request the trial court to enter judgment in his favor; rather, Plaintiff requested that the verdict "be set aside," and that he "be granted a new trial on all of the issues." Nevertheless, we treat this as a motion for judgment notwithstanding the verdict or, alternatively, a motion for a new trial for purposes of this appeal.

Although "the courts need not inflexibly enforce the [specific grounds] rule when the grounds for the motion are apparent to the court and the parties[,]" Anderson v. Butler , 284 N.C. 723, 729, 202 S.E.2d 585, 588 (1974), Plaintiff's excised "segment" of the transcript provides no context from which we can infer that the specific grounds of Plaintiff's motion were so apparent.

Although this Court has indicated that Burnette does not apply in negligence cases in a nonbinding decision, see Safron v. Council , 237 N.C. App. 182, 767 S.E.2d 149 (2014) (unpublished) (distinguishing Burnette because "it is not a negligence case"), Burnette interprets the North Carolina Rules of Civil Procedure, which apply to all civil cases, and our Supreme Court has not maintained any such distinction. See Murdock v. Ratliff , 310 N.C. 652, 663, 314 S.E.2d 518, 524 (1984) (applying Burnette in a negligence case).